UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOZEF LUBAS, individually and on behalf of all
other persons similarly situated who were employed
by JLS GROUP, INC., and/or GUILIANO
BROTHER'S LLC, and/or any other entities
Affiliated with or controlled by JLS GROUP, INC.,
GUILIANO BROTHER'S LLC and SEG
MAINTENANCE, INC.,

                Plaintiffs,

    - against -

JLS GROUP, INC., JLS GROUP CONSTRUCTION
LLC, GUILIANO BROTHER'S LLC, SEG
MAINTENANCE, INC., STEVE SEKATO,
CHARLIE CORDERO, JOSE ORDONES,
RICHARD GUILIANO, JOSEPH FIGLIOLA,
JOHN DOES 1-10, and JANE DOES 1-10.

                Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

Docket No.:

CLASS / COLLECTIVE ACTION

JURY TRIAL DEMANDED

    1.    Plaintiff JOZEF LUBAS, ("Plaintiff"), on behalf of himself and on behalf of all

others similarly situated, by and through his attorneys, Marzec Law Firm P.C., as and for his

complaint against the Defendant, JLS GROUP, INC. ("JLS Group"), JLS GROUP

CONSTRUCTION, LLC ("JLS Construction"), GUILIANO BROTHER'S LLC ("Guiliano

Brothers "), SEG Maintenance, Inc. ("SEG"), (collectively "Corporate Defendants"), STEVE

SEKATO, CHARLIE CORDERO, JOSE ORDONES, RICHARD GUILIANO, JOSEPH

FIGLIOLA, JOHN DOES 1-10, and JANE DOES 1-10., (collectively "Individual Defendants"),

(collectively "Defendants") allege as follows:

## NATURE OF THE ACTION

    2.    Plaintiff, on behalf of himself and others similarly situated brings this action to

recover unpaid wages, unpaid overtime wages, prevailing wages, liquidated damages and

reasonable attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §

201 et seq.) and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified under 29 C.F.R. § et seq. ("FLSA"), New York Labor Law Articles 6 and 19 and various wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R.§ 137-144 ("NYLL"), and the New York New York common law.

3.      Additionally, this action seeks damages, liquidated damages, and punitive damages arising out of breach of contract, unjust enrichment, fraud by certain or all Defendants and against the Individual Defendants for intentionally inducing the Corporate Defendants into violating the employee contract between the Corporate Defendants and the Plaintiff and others similarly situated of wages they rightfully earned working for the Corporate Defendants.

4.      Plaintiff, along with others similarly situated, was, for all times relevant to this Complaint, employed by Defendants, in a position for which he was paid hourly and which was not exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA").

5.      Plaintiff and others similarly situated employees were employed by the Corporate Defendant and worked various per week, but were not compensated properly for the hours they worked and the overtime hours worked.

**PARTIES**

6.      Plaintiff Jozef Lubas is a citizen of New York with an address of 262 Monroe Boulevard, Apartment 1, Valley Stream, New York 11581.

7.      During the course of his employment for each Defendant, Mr. Lubas served as a construction worker, roofer, and asbestos removal worker for Defendants.

8.      Upon Information and belief, Defendant JLS Group, at all relevant times herein, was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 152-53 10th Avenue, Suite 203, Whitestone, New York 11357.

9.    Upon Information and belief, Defendant JLS Construction, at all relevant times herein, was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 133-54 Farrington St, Suite 2C, Flushing, New York, 11354.

10.    Upon Information and belief, Defendant Guiliano Brothers, at all relevant times herein, was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New Jersey and having its principal place of business at 222 Jernee Mill Road, Sayreville, New Jersey 08872. Defendant Guiliano Brothers did business in the State of New York and employed Plaintiff therein. Most of the jobs done by Guiliano Brothers were in New York.

11.    Upon Information and belief, Defendant SEG Maintenance, Inc., at all relevant times herein, was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 1882 West 9th Street, Brooklyn, New York, 11223. Defendant SEG did business in the State of New York and employed Plaintiff therein. SEG issued payroll checks to Plaintiff.

12.    Upon information and belief, SEG was a joint employer of the other Defendants and is jointly and severally liable for all debts of the other Defendants. SEG was used by other Defendants to commit fraud against Plaintiff.

13.    Defendant Steve Sekato is an individual with a business address of 152-53 10th Avenue, Suite 203, Whitestone, New York 11357. Defendant Sekato was and is an officer or director of JLS.

14.    Steve Sekato was also a manager of Defendant Guiliano Brothers.

15.     Defendant Charlie Cordero is an individual with a business address of 152-53 10th Avenue, Suite 203, Whitestone, New York 11357. Defendant Cordero is an officer or director of JLS.

16.     Cordero was employed by JLS in the position of manager.

17.     Defendant Jose Ordones is an individual with a business address of 152-53 10th Avenue, Suite 203, Whitestone, New York 11357. Defendant Ordones is an officer or director of JLS.

18.     Mr. Ordones was and is and foreman in JLS and Guiliano Brothers.

19.     Defendant Richard Guiliano is an individual with a business address of 222 Jernee Mill Road, Sayreville, New Jersey 08872.

20.     Defendant Guiliano was and is an officer or director of Defendant Guiliano Brothers.

21.     Defendant Joseph Figliola is an individual with a business address of 1882 West 9th Street, Brooklyn, New York, 11223. Defendant Figliola was and is an officer or director of SEG.

22.     John Does 1-10 and Jane Does 1-10 are yet unknown individual defendants, supervisors, managers and agents of either of the Corporate Defendants, to be added as Defendants in the future.

23.     Individual Defendants were charged with payment of wages to Plaintiffs.

## JURISDICTION AND VENUE

24.     The Court has personal jurisdiction over JLS Group in that JLS Group is incorporated in the State of New York and is authorized to do business in the State of New York and regularly conducts business in New York.

25. The Court has personal jurisdiction over JLS Construction in that JLS Construction is incorporated in the State of New York and is authorized to do business in the State of New York and regularly conducts business in New York.

26. The Court has jurisdiction over Defendant Guiliano Brothers in that it is authorized to do business in the State of New York and regularly conducts business in New York.

27. The Court has personal jurisdiction over SEG in that SEG is incorporated in the State of New York and is authorized to do business in the State of New York and regularly conducts business in New York.

28. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that this action arises under 29 U.S.C. § 207 (FLSA); 28 U.S.C. § 1337 (Regulation of Commerce).

29. This Court has jurisdiction over Plaintiff's state law claims pursuant to U.S.C § 1367, because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

30. The Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391 (b) because substantial events or missions giving rise to Plaintiff's claims occurred in this district, and some or all defendants are residents of the district.

## JURY DEMAND

31. Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

32. Defendant JLS Group, at all relevant times herein, were and are a construction company located in Queens, New York.

33. Defendant JLS Construction, at all relevant times herein, were and are a construction company located in Queens, New York.

34.    Upon information and belief, JLS Group and JLS Construction operate as a single entity (hereinafter "JLS")

35.    Defendant Guiliano Brothers, at all relevant times herein, were and are a construction company located in Sayreville, New Jersey but at all times did business in New York.

36.    Defendant SEG, at all relevant times herein, were and are a construction company located in Brooklyn, New York.

37.    Defendant JLS is an employer subject to the FLSA, as JLS engages in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce, in that JLS employs workers who handle goods and materials that were produced or manufactured outside of New York and have moved in interstate and/or international commerce, including, construction products and tools, machinery and company cars.

38.    Upon information and belief, JLS employs over 15 employees and during Plaintiff's tenure, more than 60 persons worked for JLS.

39.    Defendant Guiliano Brothers is an employer subject to the FLSA, as GUILIANO BROTHERS engages in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce, in that GUILIANO BROTHERS employs workers who handle goods and materials that were produced or manufactured outside of New Jersey and have moved in interstate and/or international commerce, including, construction products and tools, machinery and company cars.

40.    Upon information and belief, GUILIANO BROTHERS employs over about 12-20 employees. A total of more than 60 employees worked for Guiliano Brothers during Plaintiff's tenure.

41.     Defendant SEG is an employer subject to the FLSA, as SEG engages in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce, in that SEG employs workers who handle goods and materials that were produced or manufactured outside of New York and have moved in interstate and/or international commerce, including, construction products and tools, machinery and company cars.

42.     Upon information and belief, SEG employs over about 20 employees. A total of more than 70 employees worked for SEG during Plaintiff's tenure.

43.     On or about 2015, Plaintiff was hired by GUILIANO BROTHERS.

44.     Plaintiff worked for GUILIANO BROTHERS until on or about 2016.

45.     On or about April 2016, Plaintiff was hired by JLS.

46.     On or about July 2016, Plaintiff was hired by SEG.

47.     Plaintiff worked for JLS until on or about sometime in December 2017.

48.     Plaintiff, and others similarly situated, was entitled to be paid a proper wage for the work done.

49.     Defendants agreed to pay Plaintiff $25 per hour on non-public works projects.

50.     On public works project, Plaintiff was to be paid prevailing / union level wages.

51.     Plaintiff was often not paid the hourly wage agreed to, and often was paid a lower rate and never at an overtime rate. On prevailing wage jobs, Plaintiff was entitled to much higher wages that the Plaintiff was not paid for all hours worked on all such projects.

52.     Even on non-public works jobs, despite regularly working in excess of 40 hours per week, Plaintiff (and others similarly situated) were never paid the proper overtime rate of one-and-half times his regular hourly rate for their hours in excess of 40 per week.

53.     On average, Plaintiff worked in excess of 40 hours per week each and every week. Plaintiff and others similarly situated, worked for no less than 10 hours per day, and often 12 or more hours per day.

54.     Despite the number of hours worked, Plaintiff and others similarly situated, were sometimes paid at straight time rate, but never at an overtime rate.

55.     Essentially, Plaintiff was paid less than the overtime rate of pay, and less than the agreed upon straight hourly rate.

56.     Upon information and belief, other similarly situated employees were too, underpaid and were paid no time and a half for overtime.

57.     This failure to pay was motivated to underpay Plaintiff and others similarly situated.

58.     Most disturbing of all, Defendants would change and manipulate Plaintiff's hourly wage to fit their payroll calculations, sometimes increasing and sometimes decreasing it. This hid on some payroll statements the true scope of the hours worked by Plaintiff, especially on public works projects where a prevailing wage was due.

59.     Defendants' failure to pay Plaintiffs was pursuant to a policy by which they similarly failed to pay overtime and regular wages to other employees similarly situated to Plaintiff, who also regularly worked in excess of 40 hours per week and who did not receive wages for all hours worked.

60.     During Plaintiffs' employment with JLS, the Plaintiff was one of approximately 10 plus employees over time who regularly worked in excess of 40 hours per week, but were not paid overtime and/or did not receive their wages for all hours worked.

61. During Plaintiffs' employment with Guiliano Brothers, the Plaintiff was one of approximately 10 plus employees over time who regularly worked in excess of 40 hours per week, but were not paid overtime and/or did not receive their wages for all hours worked.

62. During Plaintiffs' employment with SEG, the Plaintiff was one of approximately 10 plus employees over time who regularly worked in excess of 40 hours per week, but were not paid overtime and/or did not receive their wages for all hours worked.

63. It was Messrs. Sekato, Cordero, and Ordones, Richard Guiliano who supervised the Plaintiff working for JLS and other similarly situated, and paid Plaintiff.

64. Defendants failed to display legally required job site notices concerning state and labor laws.

65. JLS failed provide their employees, in writing in English and in the language identified by each employee as the primary language of the employee, a notice containing the rate or rates of pay and basis thereof, in contravention of NYLL § 195(1).

66. Defendants failed to track each and every employee's hours worked.

67. Defendants failed to track each employee's hours worked for any given day of a week during which the employee was employed.

68. Plaintiff lived under a constant fear of termination should he speak up to defendants concerning non-payment of lawful prevailing and overtime wages.

**Defendants' Conduct was and is Willful and Ongoing**

69. Defendants as employers have certain statutory obligations towards employees, including the requirement of paying employees at the higher overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week, and to make, keep, and preserve proper payroll records.

70. Defendants were aware of their statutory requirements, including the requirement to pay Plaintiffs and others similarly situated at the overtime premium rate for each hour worked in excess of 40 per week, and to make, keep, and preserve proper payroll records.

71. Defendants knowingly failed to pay Plaintiffs and others similarly situated all of the regular and overtime wages to which they were entitled, and to make, keep, and preserve proper payroll records.

72. As such, the various violations of the law which are alleged herein were committed knowingly, willfully, and intentionally by Defendants.

73. At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

74. Upon information and belief these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

75. From time to time, Defendants would fail to pay the unlawful wages paid to Plaintiffs and others similarly situated, and would pay these wages late.

**Facts Relating to JLS as Employer**

76. At all relevant times herein, JLS was and is controlled by Messrs. Sekato, Cordero, and Ordones.

77. At all relevant times herein, Messrs. Sekato, Cordero, and Ordones acted for and on behalf of JLS, with the power and authority vested in them as owners, officers and agents of JLS, and acted in the course and scope of his duty and function as agent and officer of JLS.

78. At all relevant times herein, Messrs. Sekato, Cordero, and Ordones directly managed, handled, or were otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks for Plaintiff—or directing payroll through other agents—and others similarly situated.

79. Messrs. Sekato, Cordero, and Ordones had control over the conditions of employment of Plaintiff and others similarly situated, including their hiring and firing, their work schedules, the rates and methods of payments of their wages, and the maintenance of their employment records.

80. At all relevant times herein, Messrs. Sekato, Cordero, and Ordones had operational control over JLS.

81. As a matter of economic reality, Messrs. Sekato, Cordero, and Ordones and JLS are joint employers of Plaintiff and others similarly situated; and, as a result, all such Defendants, individually and collectively, and jointly and severally, are liable for claims made herein.

**Facts Relating to GUILIANO BROTHERS as Employer**

82. At all relevant times herein, GUILIANO BROTHERS was and is controlled by Richard Guiliano.

83. At all relevant times herein, John Doe acted for and on behalf of GUILIANO BROTHERS, with the power and authority vested in them as owners, officers and agents of GUILIANO BROTHERS, and acted in the course and scope of his duty and function as agent and officer of GUILIANO BROTHERS.

84. At all relevant times herein, Richard Guiliano, Steve Sekato and Jose Ordones directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks for Plaintiff—or directing payroll through other agents—and others similarly situated.

85. Richard Guiliano, Steve Sekato and Jose Ordones had control over the conditions of employment of Plaintiff and others similarly situated, including their hiring and firing, their work schedules, the rates and methods of payments of their wages, and the maintenance of their employment records.

86. At all relevant times herein, Richard Guiliano, Steve Sekato and Jose Ordones, had operational control over GUILIANO BROTHERS.

87. As a matter of economic reality, JLS and GUILIANO BROTHERS are joint employers of Plaintiff and others similarly situated; and, as a result, all such Defendants, individually and collectively, and jointly and severally, are liable for claims made herein.

**Facts Relating to SEG as Employer**

88. At all relevant times herein, SEG was and is controlled by Joseph Figliola.

89. At all relevant times herein, Joseph Figliola acted for and on behalf of SEG, with the power and authority vested in him as owner, officer and agent of SEG, and acted in the course and scope of his duty and function as agent and officer of SEG.

90. At all relevant times herein, Joseph Figliola directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks for Plaintiff—or directing payroll through other agents—and others similarly situated.

91. Joseph Figliola had control over the conditions of employment of Plaintiff and others similarly situated, including their hiring and firing, their work schedules, the rates and methods of payments of their wages, and the maintenance of their employment records.

92. At all relevant times herein, Joseph Figliola had operational control over SEG.

93. As a matter of economic reality, Joseph Figliola and SEG are joint employers of Plaintiff and others similarly situated; and, as a result, all such Defendants, individually and collectively, and jointly and severally, are liable for claims made herein.

**Facts Relating to the Piercing the Corporate Veil of JLS**

94. Upon information and belief, JLS is wholly owned by Messrs. Sekato, Cordero, and Ordones.

95.     Upon information and belief, in conducting the affairs of JLS, Messrs. Sekato, Cordero, and Ordones failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

96.     Upon information and belief, Messrs. Sekato, Cordero, and Ordones used the assets of JLS as their own, and otherwise commingled personal assets with the assets of JLS.

97.     As alleged herein, Messrs. Sekato, Cordero, and Ordones used JLS in order to circumvent a statute or statutes, or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

98.     Upon information and belief, JLS was used to commit fraud against Plaintiff and others similarly situated.

99.     JLS is the alter-ego of Messrs. Sekato, Cordero, and Ordones; and, as will be established at trial, for the purpose of the claims made by Plaintiffs and others similarly situated herein, JLS has no separate legal existence from Messrs. Sekato, Cordero, and Ordones. As such, JLS and Messrs. Sekato, Cordero, and Ordones, individually and collectively, and jointly and severally, are liable for all claims made herein.

**Facts Relating to the Piercing the Corporate Veil of GUILIANO BROTHERS**

100.     Upon information and belief, GUILIANO BROTHERS is wholly owned by Richard Guiliano.

101.     Upon information and belief, in conducting the affairs of GUILIANO BROTHERS, Richard Guiliano failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

102.     Upon information and belief, Richard Guiliano used the assets of GUILIANO BROTHERS as his own, and otherwise commingled personal assets with the assets of GUILIANO BROTHERS.

103.     As alleged herein, Richard Guiliano used GUILIANO BROTHERS in order to circumvent a statute or statutes, or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

104.     Upon information and belief, GUILIANO BROTHERS was used to commit fraud against Plaintiff and others similarly situated.

105.     GUILIANO BROTHERS is the alter-ego of Richard Guiliano; and, as will be established at trial, for the purpose of the claims made by Plaintiff and others similarly situated herein, GUILIANO BROTHERS has no separate legal existence from Richard Guiliano. As such, GUILIANO BROTHERS and Richard Guiliano, individually and collectively, and jointly and severally, are liable for all claims made herein.

**Facts Relating to the Piercing the Corporate Veil of SEG**

106.     Upon information and belief, SEG is wholly owned by Joseph Figliola.

107.     Upon information and belief, in conducting the affairs of SEG, Joseph Figliola failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

108.     Upon information and belief, Joseph Figliola used the assets of SEG as his own, and otherwise commingled personal assets with the assets of SEG.

109.     As alleged herein, Joseph Figliola used SEG in order to circumvent a statute or statutes, or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

110.     Upon information and belief, SEG was used to commit fraud against Plaintiffs and others similarly situated.

111.     SEG is the alter-ego of Joseph Figliola; and, as will be established at trial, for the purpose of the claims made by Plaintiffs and others similarly situated herein, SEG has no separate

legal existence from Joseph Figliola. As such, SEG and Joseph Figliola, individually and collectively, and jointly and severally, are liable for all claims made herein.

## COLLECTIVE ACTION ALLEGATIONS

112.    Plaintiff brings this action on behalf of himself and all others current and former employees of JLS who did not receive the compensation required by the FLSA and the NYLL and New York common law with respect to their work for Defendants.

113.    Plaintiff brings this action on behalf of himself and all others current and former employees of Guiliano Brothers who did not receive the compensation required by the FLSA and the NYLL and New York common law with respect to their work for Defendants.

114.    Plaintiff brings this action on behalf of himself and all others current and former employees of SEG who did not receive the compensation required by the FLSA and the NYLL and New York common law with respect to their work for Defendants.

115.    Upon information and belief, this class of persons consists of not less than ten (10) persons.

116.    There are questions of law and fact common to the class, specifically whether the employment of Plaintiff and others similarly situated by either JLS, Guiliano Brothers or SEG is subject to the jurisdiction and the wage and overtime requirements of the FLSA and NYLL. Only the amount of individual damages sustained by each former or current employee will vary.

117.    Plaintiff and Defendants' other employees are similarly situated insofar as Defendants instituted a policy to not pay Plaintiffs and others proper overtime wages and regular wages under the FLSA and NYLL.

118.    Plaintiffs bring the FLSA and NYLL claims for relief herein individually and all others similarly situated as collective action pursuant to the FLSA and NYLL and common law,

in respect to all claims that Plaintiff, and all others similarly situated, have against Defendants as a result of Defendants' violation of the labor laws as complained herein.

## CLASS ACTION ALLEGATIONS

119.    Plaintiff brings this action on behalf of himself and all other current and former employees of Defendants who did not receive the compensation required by the FLSA and NYLL and New York common law with respect to their work for Defendants.

120.    Upon information and belief, this class of persons consist of not less than ten (10) persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23(a)(1).

121.    There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of Plaintiffs and others similarly situated by Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and NYLL and New York common law. Only the amount of individual damages sustained by each class member will vary.

122.    The claims of Plaintiff are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

123.    Plaintiff will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

124.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P. 23(b)(3).

125.    Plaintiff brings the first, second, and third claims for relief herein on behalf of himself individually and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, in respect to all claims that Plaintiff, and all others similarly

situated, have against the Defendants as a result of Defendants' violation of the FLSA, NYLL, and New York common law.

**First Claim for Relief**
**Breach of Contract**

126. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

127. Plaintiff and others similarly situated entered into an oral contract with Defendants to supply work in furtherance of Defendants' business in exchange for hourly wages.

128. Plaintiff and others similarly situated, satisfactorily supplied labor and otherwise complied with the terms of his employment agreement with Defendants, and was therefore entitled to the wages he earned while working for Defendants.

129. Defendants failed or refused to pay Plaintiff and others similarly situated all of their wages to which he was entitled under his employment agreement.

130. Defendants' failure or refusal to pay Plaintiff and others similarly situated all of the wages to which he was entitled under his employment agreement constituted a breach of such employment agreement.

131. By virtue of the foregoing breach of contract by Defendants, Plaintiff and others similarly situated have been damaged in an amount to be proven at trial based upon an accounting of the amount he should have been paid as contemplated by his employment agreement, less amounts he actually was paid, together with interests, costs, disbursements, and attorneys' fees.

**Second Claim for Relief – Unpaid Wages and Overtime**
**New York Minimum Wage Act NYLL § 650 et seq.**

132. Plaintiff repeats and realleges each and every allegation above as if set forth fully and at length herein.

133.     At all times relevant to this action, Plaintiff, and all others similarly situated, were employed by Defendants, within the meaning of the New York Labor Law ("NYLL"), §§ 2 and 651 and the regulation thereunder including 12 NYCRR § 142.

134.     Pursuant to the NYLL, Plaintiff, and all others similarly situated, were entitled to certain overtime wages, which Defendants intentionally failed to pay in violation of such laws.

135.     Plaintiff, and all others similarly situated, regularly worked in excess of 40 hours per week for Defendants, but did not receive the proper wages and overtimes wages to which they were entitled.

136.     Defendants failed to appraise Plaintiff, and all others similarly situated, of their rights under New York Labor Law.

137.     Defendants failed to furnish Plaintiff, and all others similarly situated, with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 142-2.7.

138.     Defendants failed to keep true and accurate records of hours worked by each employee, including Plaintiff, and all others similarly situated, covered by a proper hourly wage rate.

139.     Defendants failed to establish, maintain, and preserve for not less than six years, payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4) and New York State Department of Labor Regulation § 142-2.6.

140.     Pursuant to these labor law violations, Plaintiff, and all others similarly situated, is entitled to recover from Defendants his unpaid wages and sums illegally deducted from his wages,

reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1).

141.     Plaintiff, and all others similarly situated, is also entitled to recover liquidated damages and civil penalties for an amount equal to one hundred percent of the total such underpayments found to be due.

142.     At all times relevant to this action, Defendants failed and willfully failed to pay Plaintiff, and all others similarly situated, overtime wage at rates of at least 1.5 times their regular rate of pay for each and all hours he worked in excess of forty hours in a week, in violation of the New York Minimum Wage Act and its implementing regulation. NYLL §§ 650 et seq.; 12 NYCRR § 142-2.2.

143.     Due to Defendants' New York Labor Law violations, Plaintiff, and all others similarly situated, are entitled to recover from Defendants, their unpaid overtime wages, maximum liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 663(1).

144.     Wherefore, Plaintiff demands a money judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

### Third Claim for Relief – Unpaid Wages and Overtime
### Fair Labor Standards Act – 29 U.S.C. 201 et seq.

145.     Plaintiff repeats and realleges each and every allegation above as if set forth fully and at length herein.

146.     Plaintiff, and all others similarly situated, were, for all times relevant to this Complaint, employed by Defendants, a position for which they were paid hourly and that is not exempt from the overtime provisions of FLSA.

147.   At all times relevant herein, Defendants were engaged in commerce and/or in the production of goods for commerce and/or Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA including 29 U.S.C. § 207 (a).

148.   At all times relevant herein, Defendants failed and willfully failed to pay Plaintiff and all others similarly situated overtime wages at rates of at least 1.5 times their regular rate of pay for each and all hours they worked in excess of forty hours in a work week, in violation of 29 U.S.C. § 207, 216(b).

149.   At all times relevant herein, Defendants failed and willfully failed to pay Plaintiff, and all others similarly situated, minimum wages.

150.   Plaintiff and all others similarly situated were paid hourly and not exempt from the right to receive overtime pay or minimum wages under the FLSA.

151.   At all times relevant to this Complaint, Defendants had a policy of willfully failing to make overtime payments for hours worked in excess of forty (40) hours per week.

152.   As a result of Defendants' failure to compensate Plaintiff, and all others similarly situated, at a rate not less than 1½ time the regular rate of pay for work performed in excess of forty (40) hours in a work week, Defendants have violated and continue to violate FLSA 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

153.   Defendants failed to make, keep and preserve records with respect to Plaintiff and all others similarly situated, sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 255(a).

154.   Defendants conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

155.    As result of the Defendants' failure to properly credit, record, report and/or compensate Plaintiff, and all others similarly situated, Defendants have failed to make, keep and preserve records with respect to each of its employees, including Plaintiff, and all others similarly situated, sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

156.    Defendants have failed to properly disclose or appraise Plaintiff, and all others similarly situated, of their rights under the FLSA.

157.    As a direct and proximate result of the Defendants' violation of the FLSA, Plaintiff, and all others similarly situated, are entitled to liquidated damages pursuant to the FLSA.

158.    Plaintiff, and all others similarly situated, are entitled to an award of reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

159.    Plaintiff, and all others similarly situated, seek a judgment for unpaid overtime wages, regular wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiff, and Plaintiff also seeks an award of liquidated damages, attorneys' fees, interest and costs as provided by the FLSA.

160.    Due to Defendants' FLSA violations, Plaintiff, and all others similarly situated, are entitled to recover from Defendants their unpaid overtime compensation, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b).

161.    Wherefore, Plaintiff demands a money judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

## Fourth Claim for Relief
## Quantum Meruit

162.     Plaintiff repeats and realleges each and every allegation above as if set forth fully and at length herein.

163.     Plaintiff, and all others similarly situated, performed work and services for Defendants.

164.     Plaintiff, and all others similarly situated, had a reasonable expectation of payment for the hours they worked for the Defendants.

165.     Defendants failed to remunerate Plaintiff, and all others similarly situated, for all the hours they worked.

166.     Defendants failed to pay Plaintiff, and all others similarly situated, an overtime rate of pay for all the hours they worked.

167.     Plaintiff, and all others similarly situated, are entitled to be paid for a reasonable value for their services, less the amounts paid to them, together with an award of interest, costs, disbursements and attorneys' fees.

168.     Wherefore, Plaintiff demands a money judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

## Fifth Claim for Relief
## Fraud

169.     Plaintiff repeats and realleges each and every allegation above as if set forth fully and at length herein.

170.     At the times alleged herein, Defendants made fraudulent representations of fact to Plaintiff, and all others similarly situated.

171. The misrepresentations included, but were not limited to, Defendants telling Plaintiff, and all others similarly situated, that they would be paid all wages due, including overtime wages.

172. The misrepresentations include Defendants telling Plaintiff he would be paid overtime wages for hours worked above and beyond the initial 40 hours worked in a given week and that he would be paid prevailing wages.

173. Defendants' misrepresentation of the intent to perform was a knowing misrepresentation of a material fact.

174. Plaintiff relied on the Defendants' misrepresentation to his detriment.

175. Upon the misrepresentation, Plaintiff, and all others similarly situated, continued working for Defendants.

176. Defendants committed fraud against Plaintiff, and all others similarly situated, by failing to pay them all wages due.

177. Wherefore, Plaintiff demands a money judgment in an amount to be proven at trial, individually and collectively for all other similarly situated employees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

(1) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201 et seq., NYLL – 12 NYCRR § 142 and Article 6 of the NYLL § 190 et seq.;

(2) As to the First Claim for Relief, award Plaintiffs damages arising out of the breach of contract against JLS;

(3) As to the First Claim for Relief, award Plaintiffs damages arising out of the breach of contract against Guiliano Brothers;

(4)     As to the First Claim for Relief, award Plaintiffs damages arising out of the breach of contract against SEG;

(5)     As to the Second Claim for relief, award Plaintiffs, their unpaid overtime wages due under the New York Minimum Wage Act and the Regulation thereunder including 12 NYCRR § 142-2.2, together with maximum liquidated damages, prejudgment interest, costs and attorneys' fees pursuant to NYLL § 663;

(6)     As to the Second Claim for Relief, award Plaintiffs, any and all outstanding (additional) wages, including overtime wages plus prejudgment interest, costs, disbursements and attorneys' fees pursuant to pursuant to NYLL § 198;

(7)     As to the Second Claim for Relief, award Plaintiffs, damages arising out of violation of NYLL;

(8)     As to the Third Claim for Relief, award Plaintiffs their unpaid wages and overtime wages due under the FLSA, together with maximum liquidated damages, costs and attorneys' fees pursuant to 29 U.S.C. § 216(b);

(9)     As to the Fourth Claim for Relief, award Plaintiff the quantum meruit value of his labor.

(10)    As to the Fifth Claim for Relief, award Plaintiffs damages arising out of JLS' fraud;

(11)    As to the Fifth Claim for Relief, award Plaintiffs damages arising out of GUILIANO BROTHERS's fraud;

(12)    As to the Fifth Claim for Relief, award Plaintiffs damages arising out of SEG's fraud;

(13)    Award Plaintiffs, any relief requested or stated in the preceding paragraphs but which has not been requested in the WHEREFORE clause or "PRAYER FOR RELIEF", in addition to the relief requested in the wherefore clause/prayer for relief;

(14)    If liquidated damages pursuant to FLSA 29 U.S.C. § 216(b) are not awarded, an award of prejudgment interest pursuant to 28 U.S.C. § 1961;

(15)    Award prejudgment interest pursuant to New York Civil Practice Law and Rules §§ 5001-02;

(16)    Award postjudgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law And Rules § 5003;

(17)    Award attorneys' fees, costs and further expenses of this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1)-(2) and 663(1);

(18)    Award Plaintiff all other relief requested in this Complaint;

(19)    Award Plaintiff other, further and different relies as the Court deems just and proper; and

(20)    An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: October 29, 2018
        Brooklyn, New York

                                    Respectfully submitted,

                                    **MARZEC LAW FIRM, PC**

By:     */s/ Darius A. Marzec*
        Darius A. Marzec, Esq.
        Attorney for Plaintiffs
        *Jozef Lubas*
        *AND COLLECTIVELY FOR ALL*
        *OTHER FORMER AND CURRENT*
        *EMPLOYEES*
        776A Manhattan Avenue, Suite 104
        Brooklyn, NY 11222
        (718) 609-0303
        dmarzec@marzeclaw.com