UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOZEF LUBAS, LEY ROBERT BOBADILLA,
DANNY DIAZ, GEOVANNY MONTERO, CESAR
AUGUSTO, and MENISIO MARTINEZ,
 *individually and on behalf of all other persons*
*similarly situated*,

                              Plaintiffs,

                 -against-

JLS GROUP, INC., GUILIANO ENVIRONMENTAL, LLC d/b/a
GUILIANO BROTHERS LLC, SEG MAINTENANCE INC.,
RICHARD a/k/a RICHIE [Last Name Unknown],
STEVE SEKATO, CHARLIE CORDERO,
JOSE ORDONES, JOSEPH FIGLIOLA,
CHRISTOPHER GUILIANO, JOHN DOES 1-10,
JANE DOES 1-10,

                             Defendants.
-----------------------------------------------------------------X

**MEMORANDUM AND
ORDER**
18-CV-6611-KAM-SJB

**BULSARA, United States Magistrate Judge:**

       On February 12, 2020, Plaintiffs Jozef Lubas ("Lubas"), Robert Ley Bobadilla

("Bobadilla"), Geovanny Montero ("Montero"), Cesar Augusto ("Augusto"), and Menisio

Martinez ("Martinez") (collectively "Plaintiffs") filed a motion for conditional

certification of a collective action in this Fair Labor Standards Act ("FLSA") case

brought against the following Defendants: JLS Group, Inc. ("JLS"), Guiliano

Environmental LLC ("Guiliano LLC"), SEG Maintenance, Inc. ("SEG"), (collectively

"Corporate Defendants"), and several individuals—Steve Sekato, Charlie Cordero, Jose

Ordones, Richard (last name unknown), Joseph Figliola, (together with the Corporate

1

Defendants, "Defendants").¹  (Notice of Mot. to Certify FLSA Collective Action dated
Feb. 12, 2020 ("Pls.' Mot."), Dkt. No. 53).

Plaintiffs have moved for conditional certification of a collective action of all
current and former employees of:

> JLS Group, Inc., Guiliano Environmental, LLC or SEG Maintenance, Inc.
> (the "Corporate Defendants") at any time between January 1, 2013
> [through] the present

(Proposed Notice dated Feb. 12, 2020 ("Proposed Notice"), attached as Ex. E to Decl. of
Darius Marzec in Supp. of Mot. to Certify FLSA Collective Action, Dkt. No. 53 at 1).  The
Corporate Defendants are construction companies that perform work such as
demolition and asbestos removal.  (TAC ¶¶ 36–38; Decl. of Saul D. Zabell dated Feb. 26,
2020 ("Zabell Decl."), attached to JLS Reply in Opp. to Notice of Mot., Dkt. No. 55 ¶¶ 2–
3; Decl. of Christopher Guiliano dated Feb. 25, 2020 ("Guiliano Decl."), attached to
Guiliano Reply in Opp. Pl.'s Mot. dated Feb. 26, 2020, Dkt. No. 54 ¶ 1).  For the reasons
stated below, the motion is granted in part.²

<u>STANDARDS FOR MOTION FOR COLLECTIVE CERTIFICATION</u>

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance
of the minimum standard of living necessary for health, efficiency, and general well-
being of workers[.]"  29 U.S.C. § 202(a).  The statute requires employers to pay

---

¹ Plaintiffs have named several "John Does" and "Jane Does."  (Third Am. Compl.
dated Aug. 15, 2020 ("TAC"), Dkt. No. 41 at 1).  No motion to add or identify such
defendants has been made.

² "[A] magistrate judge . . . [may] hear and determine any pretrial matter pending
before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional
certification of a collective action which is only a "preliminary determination" and not
dispositive.  *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265–67 (E.D.N.Y. 2005);
*see also Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010)
(collecting cases).

employees a minimum hourly wage, *id.* § 206, and an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed," *id.* § 207.  Section 216(b) of FLSA provides a private right of action to an employee to recover unpaid minimum wages or overtime compensation from an employer who violates the Act's provisions.  The same section permits plaintiffs to have their case certified as a collective action on behalf of "themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Unlike Rule 23 class actions, a collective action is "opt-in," meaning to join the suit a person must "give[] his consent in writing to become such a party" and file that consent in the "court in which such action is brought."  29 U.S.C. § 216(b).

A two-stage inquiry determines whether a motion to certify a FLSA collective action should be granted.  *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Summa*, 715 F. Supp. 2d at 384.  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs *do in fact exist*."  *Id.* (additional emphasis added).

"In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required.  This first stage determination is based on the pleadings, affidavits and declarations."  *Bifulco*, 262 F.R.D. at 212 (quotations, citations, and brackets omitted);

3

*Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members.").  That being said, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (quotations omitted).  Ultimately, however, although the inquiry "cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof." *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)). Consistent with this low standard of proof, "'[a]t [this] initial assessment stage, . . . the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.'" *Summa*, 715 F. Supp. 2d at 385 (quoting *Francis v. A & E Stores, Inc.*, No. 06-CV-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008)).[3]

"Because the standard at the first stage is fairly lenient, courts applying it typically grant conditional certification." *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (quotations and alterations omitted).  Should the plaintiff make the requisite initial showing, he is entitled to conditional certification of a collective action, and a court may "authorize an FLSA

---

[3] The modest factual showing is "considerably less stringent than the requirements for class certification under Rule 23." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (quotations omitted).  That is, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action" under Rule 23.  *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009) (quotations omitted).

plaintiff to provide written notice to potential plaintiffs of their right to join in the action." *Gortat v. Capala Bros.*, No. 07-CV-3629, 2009 WL 3347091, at *8 (E.D.N.Y. Oct. 16, 2009), *report and recommendation adopted*, 2010 WL 1423018 (Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) ("If the plaintiffs demonstrate that 'similarly situated' employees exist, the [c]ourt should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process." (citation and quotations omitted)).

Following the distribution of the notice, the completion of any opt-in period, and any additional discovery, the Court undertakes the second stage of the two-part Section 216(b) inquiry. "[A]t the second stage, the district court will, on a fuller record, determine . . . whether the plaintiffs who have opted in *are in fact* 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555 (emphasis added) (quotations omitted). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

These facts are drawn from the Third Amended Complaint and declarations, and to the extent necessary, the Court has identified the factual assertions Defendants take issue with. The case was filed on November 19, 2018. (Compl. dated Nov. 19, 2018, Dkt. No. 1). On February 12, 2020, Plaintiffs moved for conditional certification of their FLSA claims pursuant to 29 U.S.C. § 216(b). (Pls.' Mot.). Plaintiffs have submitted five declarations from five different employees (Lubas, Montero, Bobadilla, Martinez, and Augusto) in support of their motion.

The Corporate Defendants—JLS, SEG, and Guiliano LLC—operate in the construction, demolition, and asbestos removal industry. (Guiliano Decl. ¶ 1; Zabell Decl. ¶¶ 2–3). Most of their respective employees were Spanish speaking and undocumented. (Decl. of Ley Robert Bobadilla dated Jan. 27, 2020 ("Bobadilla Decl."), attached to Pls.' Mot, Dkt. No. 53 ¶ 12; Decl. of Menisio Martinez dated Jan. 27, 2020 ("Martinez Decl."), attached to Pls.' Mot., Dkt. No. 53 ¶ 12; Decl. of Geovanny Montero dated Jan. 27, 2020 ("Montero Decl."), attached to Pls.' Mot., Dkt. No. 53 ¶ 10; Decl. of Cesar Augusto dated Jan. 27, 2020 ("Augusto Decl."), attached to Pls.' Mot., Dkt. No. 53 ¶ 10; Decl. of Jozef Lubas dated Feb. 12, 2020 ("Lubas Decl."), attached to Pls.' Mot., Dkt. No. 53 ¶ 6).

Plaintiffs were employed as construction workers, roofers, and asbestos removal workers. (Bobadilla Decl. ¶ 4; Martinez Decl. ¶ 4; Montero Decl. ¶ 2; Augusto Decl. ¶ 2; Lubas Decl. ¶ 5). Their job responsibilities included, but were not limited to, a number of on-site tasks such as removing debris, loading and unloading building materials, and removing asbestos. (*Id.*).

Plaintiffs allege Defendants agreed to pay them $25 per hour on non-public works projects and prevailing (or "union level") wages on public works projects. (Bobadilla Decl. ¶ 6; Martinez Decl. ¶ 8; Montero Decl. ¶ 4; Augusto Decl. ¶ 6; Lubas ¶ 8). Lubas alleges that he was told by his direct supervisor, Clarence Schmidt, that an employee's hourly rate for public works projects would be at least $70.00 per hour, and that in addition to the higher hourly rate, employees working at such public works projects would be entitled to additional employee benefits. (TAC ¶ 112). However, Defendants often did not pay Plaintiffs either the agreed wage or for all hours worked; that is, they were not paid for all hours worked on all projects (thereby depriving them

of minimum and overtime wages), and they were paid $25 per hour regardless of the number of hours worked or the type of project (thereby depriving them of the additional hourly wages due for working overtime, and the benefit of prevailing wage owed for public works projects). (Bobadilla Decl. ¶ 8; Martinez Decl. ¶ 8; Montero Decl. ¶ 4; Augusto Decl. ¶ 4; Lubas ¶ 10).

Plaintiffs further contend that as part of their job responsibilities, they were required to report to work at a place designated by Defendants, usually in Jackson Heights, Queens. (Bobadilla Decl. ¶ 10; Martinez Decl. ¶ 10; Montero Decl. ¶ 8; Augusto Decl. ¶ 8; Lubas ¶ 12). Defendants asked Plaintiffs to report there before starting work at various job sites; this required Plaintiffs to travel from the designated place to the worksite in Defendants' vehicles. (TAC ¶ 68). The time spent waiting for Defendants' vehicles and traveling to the worksite was never compensated. (*Id.* ¶ 71). Numerous employees would be waiting at the designated area to be picked up. (Bobadilla Decl. ¶ 10; Martinez Decl. ¶ 10; Montero Decl. ¶ 8; Augusto Decl. ¶ 8; Lubas ¶ 12). During those waiting periods, Plaintiffs spoke to several workers who would complain to them about not receiving compensation for waiting time. (*Id.*).

As one example of these allegedly unlawful employment practices, Lubas claims that he regularly worked from 7:00 AM to 4:00 PM for a total of between over 8 and over 10 hours per work day. (TAC ¶ 73). He would be picked up at approximately 6:00 AM in Jackson Heights, New York. (*Id.*). He regularly worked five or six days a week for a total of between over 40 hours and 60 hours per week, with an additional one hour spent waiting and traveling for each work day. (*Id.*). His total weekly hours would be somewhere between 45 and over 66 hours. (*Id.*). Lubas claims he was never paid

overtime for hours worked in excess of 40 per week.  (*Id.* ¶ 74).  He was also not paid for all hours worked.  (*Id.* ¶ 75).

In April 2017, Bobadilla and Montero worked at a mall in Spring Valley, New York as roofers.  (TAC ¶ 95).  The hours at the Spring Valley worksite were 5:00 PM to 2:00 AM for six days a week for the entire month of April 2017.  (*Id.* ¶ 97).  Bobadilla and Montero allege that they were paid for only 48 hours per week even when they worked at least 54 to more than 60 hours, not including travel time.  (*Id.*).  They were also not paid any overtime wages.  (*Id.*).  Bobadilla and Montero were also employed by the Corporate Defendants as asbestos handlers for a worksite at 45 Hall Ave. Eastchester, New York 10709, the address for Waverly Elementary School, as reflected in public records.  (*Id.* ¶ 98).  They worked onsite from 7:00 PM to 3:00 AM for six days per week for most of the month of October 2017.  (*Id.*).  However, they were only paid for 8 hours of work each day at $25 per hour without any overtime pay or pay for travel time.  (TAC ¶ 98).

As another example, Plaintiffs state that they were hired to work on a public works project at the Fashion Institute of Technology ("FIT") campus for the Corporate Defendants for various times ranging from Summer 2017 to Fall 2017.  (Bobadilla Decl. ¶ 9; Martinez Decl. ¶ 9; Montero Decl. ¶ 7; Augusto Decl. ¶ 7; Lubas ¶ 11).  They were supposed to receive a prevailing wage of at least $70 per hour and employee benefits; however, they only received $25 per hour, were not paid for all hours worked, and never received any employee benefits.  (*Id.*).  They argue this was the case for all of the employees working on the FIT project.  (*Id.*).

Plaintiffs allege that "the same people worked for the various Corporate Defendants and [that] they perpetuated these unlawful activities regardless of the

8

company name." (Bobadilla Decl. ¶ 15; Martinez Decl. ¶ 15; Montero Decl. ¶ 13; Augusto Decl. ¶ 13). Defendants each dispute whether Plaintiffs worked for them and when.

A.   Employment with Guiliano LLC

Defendant Guiliano LLC is a construction company located in New Jersey. (TAC ¶ 37). It conducted business in Brooklyn and Queens. (*Id.*). Guiliano LLC employed over 100 employees. (Martinez Decl. ¶ 12; Bobadilla Decl. ¶ 12; Lubas Decl. ¶ 6).

Lubas states he was employed by Guiliano LLC from on or about 2015 to 2016. (Lubas Decl. ¶ 1). Guiliano, in contrast, contends that Lubas was only employed by the company from June 10, 2016 to September 30, 2016. (Guiliano Mem. in Opp. Pl.'s Mot. dated Feb. 26, 2020 ("Guiliano Resp."), Dkt. No. 54 at 2; Guiliano Decl. ¶ 8). Lubas's reply briefs do not dispute Guiliano's more specific and narrower time-frame for his employment.

Bobadilla and Martinez also claim that they were employed by Guiliano LLC. (Bobadilla Decl. ¶ 1; Martinez Decl. ¶ 1). Bobadilla claims that he was employed by Guiliano from sometime in 2013 to approximately February 2016. (Bobadilla Decl. ¶ 1). Martinez claims that he was employed by Guiliano from sometime in 2013 to sometime in 2015. (Martinez Decl. ¶ 1).[4] Guiliano contends that it did not employ either Bobadilla or Martinez. (Guiliano Resp. at 2; Guiliano Decl. ¶ 9).

B.   Employment with JLS

JLS is a construction company located in Queens, New York. (TAC ¶ 36). JLS "employs over 15 employees, and during [their] tenure, more than 60 [people] worked

---

[4] This is at odds with the complaint which states that Martinez was employed by Guiliano LLC from around January 2014 to December 2014. (TAC ¶ 48).

for JLS."  (Bobadilla Decl. ¶ 12; Martinez Decl. ¶ 12; Montero Decl. ¶ 10; Augusto Decl. ¶ 10; Lubas Decl. ¶ 6).

On or about April 2016, Lubas was hired by JLS and worked for JLS until around December 2017.  (Lubas Decl. ¶¶ 2, 4).  Bobadilla claims that on or about March 2016, he was hired by JLS and worked for JLS until or about sometime in October 2017.  (Bobadilla Decl. ¶¶ 2, 3).  Martinez alleges that on or about June 2017, he was hired by JLS and worked for JLS until on or about sometime in October 2017.  (Martinez Decl. ¶¶ 2, 3).[5]  Montero alleges JLS employed him from on or about January 2017 to September 2017.  (Montero Decl. ¶ 1).

JLS admits that these four Plaintiffs—Lubas, Bobadilla, Martinez and Montero—worked for them, (Zabell Decl. ¶¶ 5–7); however, they contend that their work was restricted to three projects: the Waverly Elementary School project (the "Waverly Project") in Eastchester, New York; FIT in Manhattan, New York; and the Spring Valley High School project (the "Spring Valley Project") in Spring Valley, New York.  (*Id.* at 1; Zabell Decl. ¶¶ 5–7),[6] with only Martinez working on the Spring Valley Project.  (Zabell Decl. ¶ 6; *see* Spring Valley Project Timesheets dated Aug. 9, 2017 and Aug. 31, 2017, attached as Ex. C to Zabell Decl., Dkt. No. 55).  Plaintiffs' reply papers do not dispute JLS's evidence about which projects they worked on.

With respect to Augusto, he claims he was employed with JLS from on or about February 2017 through September 2017.  (Augusto Decl. ¶ 1).  JLS states that it has no record of Augusto's employment.  (Zabell Decl. ¶ 8).

---

[5] Again, this is at odds at what is in the complaint, which states that Martinez was employed by JLS from 2015 through 2017.  (TAC ¶ 48).

[6] Plaintiffs do not mention a Waverly Project in their declarations.

C.    Employment with SEG

SEG is a construction company located in Brooklyn, New York.  (TAC ¶ 38).  SEG

employed over 70 employees.  (Bobadilla Decl. ¶ 12; Martinez Decl. ¶ 12; Montero Decl.

¶ 10; Augusto Decl. ¶ 10; Lubas Decl. ¶ 6).

Lubas claims that he was hired by SEG in July 2016.  (Lubas Decl. ¶ 3).  Augusto

alleges that he was hired by SEG from February 2017 to September 2017.  (TAC ¶ 46).

SEG claims, however, that it employed only Lubas on the Waverly Project in

Eastchester, New York, at various intermittent dates between July 2017 and January

2018, and that his hours were tracked for each day worked on the project.  (Zabell Decl.

¶ 5; *see* Waverly Project Timesheets dated July 5, 2017, July 10, 2017, and July 11, 2017

("Waverly Project Timesheets"), attached as Ex. A to Zabell Decl., Dkt. No. 55).  SEG has

no record of employing Augusto.  (Zabell Decl. ¶ 8).  SEG also claims that it did not

employ any of the other Plaintiffs.  (*Id.* ¶ 5).  Plaintiffs' reply papers do not dispute

SEG's narrower time-frame for Lubas or the denial of Augusto's employment.

\*                              \*                              \*                              \*

The chart below details Plaintiffs' alleged periods of work for each Company and

each project:[7]

| Defendant | JLS/SEG | Guiliano LLC | FIT Project | Waverly Project | Spring Valley Project |
|---|---|---|---|---|---|
| Jozef Lubas | 4/2016 - unknown | 2015 - 2016 | 7/10/2017 - 9/17/2017 | 7/2017 - 1/2018 | |
| Ley Bobadilla | 3/2016 - 10/2017 | 2013 - 2/2016 | 6/2017 - 8/2017 | 10/2017 | 4/2017 |
| Geovanny Montero | 1/2017 - 9/2017 | NONE | 6/2017 - 8/2017 | 10/2017 | 4/2017 |
| Menisio Martinez | 6/2017 - 10/2017 | 2013- 2015 | 6/2017 - 9/2017 | | |
| Cesar Augusto | 2/2017 - 9/2017 | NONE | 6/2017 - 8/2017 | | |

---

[7] The dates for Lubas for the Waverly Project are the dates alleged by Defendants, (*see* Zabell Decl. ¶ 5).  All other dates are taken from Plaintiffs' declarations and the Amended Complaint where necessary.  (*See* Lubas Decl. ¶¶ 1–4, 11; Bobadilla Decl. ¶¶ 1–3, 9; Montero Decl. ¶¶ 1, 7; Martinez Decl. ¶¶ 1–3, 9, Augusto Decl. ¶¶ 1, 7; TAC ¶¶ 97–98).  Where the alleged dates are in dispute, the information is marked in red.

D.    Connection between JLS, SEG, and Guiliano LLC

Plaintiffs allege that the Corporate Defendants were an integrated enterprise and joint employer of Plaintiffs.  (TAC ¶ 20).  They contend that employees worked interchangeably between Corporate Defendants' work projects and the employees were subject to the same pay practice at each of the Corporate Defendants.  (*Id.* ¶ 39).  They also allege that the Defendants shared managerial employees.  For example, Charlie Cordero was an owner of SEG, a manager of JLS and Guiliano LLC, and worked interchangeably among the Corporate Defendants; Jose Ordones is a manger of all three companies and worked interchangeably between them as well; and Steve Sekato was a manager of Corporate Defendants JLS and Guiliano LLC and worked interchangeably between the two companies.  (*Id.* ¶¶ 20–23).  Plaintiffs claim that Cordero would regularly visit JLS's and Guiliano LLC's work sites and give Plaintiffs and their co-workers instructions.  (*Id.* ¶ 39).  Defendant Ordones would do the same at all three Corporate Defendants' work sites.  (*Id.* ¶ 39).

Defendants claim, however, that JLS, SEG, and Guiliano LLC are three separate corporate entities; one of which, Guiliano LLC, shares no common ownership or management with the other two corporations.  (Guiliano Resp. at 2; JLS & SEG Reply in Opp. to Notice of Mot. to Certify FLSA Collective dated Feb. 26, 2020 ("JLS & SEG Resp."), Dkt. No. 55 at 6).  JLS and SEG however, seemingly do not dispute that JLS and SEG share common ownership and management.  (JLS & SEG Resp. at 6).

DISCUSSION

I.    Conditional Certification of Collective Action

Plaintiffs have moved for conditional certification of a collective action for all current and former employees of:

> JLS Group, Inc., Guiliano Environmental, LLC or SEG Maintenance, Inc. (the "Corporate Defendants") at any time between January 1, 2013 [through] the present.

(Proposed Notice at 1).  Plaintiffs must demonstrate that they are similarly situated to the potential opt-in plaintiffs—all the current and former employees of JLS, SEG, and Guiliano LLC—and that such individuals were subject to the same unlawful policy. Plaintiffs allege that employees of JLS, SEG, and Guiliano LLC were not paid overtime wages, prevailing wages, or fully compensated for all hours worked, specifically time spent waiting at a designated area for Defendants to pick them up for projects.  (Mem. in Supp. of Pls.' Mot. dated Feb. 12, 2020, Dkt. No. 53 at 1).

At this stage it is only necessary to consider whether the alleged policies violate federal law.  "Collective actions under the FLSA encompass only FLSA violations." *Feng v. Soy Sauce LLC*, No. 15-CV-3058, 2016 WL 1070813, at \*4 (E.D.N.Y. Mar. 14, 2016) (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011)); *Myers*, 624 F.3d at 555 ("The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to *whether a FLSA violation has occurred*." (emphasis added)); *Zeledon v. Dimi Gyro LLC*, No. 15-CV-7301, 2016 WL 6561404, at \*6 (S.D.N.Y. Oct. 13, 2016) ("[A] plaintiff must at least make a facially adequate showing that putative members of the collective are similarly situated with respect to the FLSA violations the named plaintiff alleges[.]" (alterations and quotations omitted)).  "To bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23." *Feng*, 2016 WL 1070813, at \*4.

FLSA requires employers to pay employees for all time worked.  *See* 29 U.S.C. § 207; 29 C.F.R. § 778.223(a) (stating that "hours worked" under § 207 include "(1) [a]ll

time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) all time during which an employee is suffered or permitted to work whether or not he is required to do so").  In addition, FLSA requires employers pay an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a).  "Time that an employee spends waiting for work assignments is compensable if the waiting time is spent primarily for the benefit of the employer and his business."  *Moon v. Kwon*, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002) (quotations omitted).  Plaintiffs' request for conditional certification contains multiple components—a failure to pay for all time worked and overtime, and a failure to pay prevailing wages—and attempts to include three different corporations within the scope of a collective action going back to 2013. Each of these components is analyzed separately.

A.  JLS and SEG's failure to pay wages for all time worked and overtime

Plaintiffs have established through their declarations that they were subject to a policy that runs afoul of FLSA while employed for JLS and SEG: the practice of not paying for all hours worked—including time spent waiting on the employers' premises— and not paying overtime.  They have submitted multiple declarations based on personal observations that corroborate each other's allegations against JLS and SEG.  They have each alleged that they were not paid for all hours worked on all projects and that they received $25 per hour regardless of the number of hours worked.  (Bobadilla Decl. ¶ 8; Martinez Decl. ¶ 8; Montero Decl. ¶ 4; Augusto Decl. ¶ 4; Lubas ¶ 10).  They also claim to have personally observed this unlawful policy, and that the policy is enforced against co-workers.  These co-workers also told Plaintiffs that they never received overtime pay.

(Bobadilla Decl. ¶ 14; Martinez Decl. ¶ 14; Montero Decl. ¶ 12; Augusto Decl. ¶ 12; Lubas ¶ 13).

Plaintiffs' evidence is sufficient to warrant conditional certification of a collective action. At the conditional certification stage "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013); *see also Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) ("[C]ourts regularly grant conditional certification of collective actions based on employee affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name."); *Colon v. Major Perry St. Corp.*, No. 12-CV-3788, 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA.") (collecting cases); *Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." (quotations omitted)).

JLS and SEG argue that Plaintiffs have not met the modest factual showing necessary under FLSA collective certification. They point to the fact that Plaintiffs' declarations contain only generalized statements which lack detail and actual evidence sufficient to demonstrate that potential opt-in plaintiffs are "similarly situated." (JLS & SEG Mem. at 3). However, where there are declarations from multiple plaintiffs, with each plaintiff corroborating or supporting each other's statements, even if somewhat thin on details, such proof is sufficient to meet the low factual threshold for FLSA

collective certification.  *See, e.g.*, *Placinta v. Grazina Pilka, Inc.*, No. 16-CV-4272, 2018 WL 5024170, at *9, *14 (E.D.N.Y. Oct. 05, 2018) (granting motion for conditional certification where there were multiple affidavits corroborating each other's statements even though the factual record proffered was "ultimately quite thin on facts"); *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 548−49 (S.D.N.Y. 2015) (certifying limited collective action where affidavits of two employees "corroborate[d] each others' personal treatment and observations of the treatment of other employees" despite noting that "[w]hile it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics"); *Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (noting that details as to observations and conversations with other employees "are particularly important where a conditional certification motion is based on the lone affidavit of a *single* employee, who performed a single job function" (emphasis added)). Here, Plaintiffs have submitted five declarations from five different employees alleging a common policy of not compensating employees for all hours worked and not paying them overtime.

Next, JLS and SEG contend that even if the motion is granted, a certification of "all former employees" is too broad.  (JLS & SEG Resp. at 6−7).  They argue that Plaintiffs have failed to demonstrate that they and potential opt-in plaintiffs of "all former employees" are similarly situated regardless of roles, which jobsites they worked, or who supervised their work.  (*Id.*).  They ask the Court to narrow the scope of conditional certification.

The Court agrees.  Plaintiffs have not established that these policies were common to all other employees regardless of their role.  Although the burden at this

stage of certification is minimal, the thin evidence provided with respect to the "other workers" results in the Court concluding that a far more limited collective should be conditionally certified.

Lubas, Montero, Martinez, Bobadilla, and Augusto all held the same titles and performed the same job duties. They were all construction workers, roofers, and asbestos removal workers. Their tasks included, but were not limited to, a number of on-site jobs, such as removing debris, loading and unloading building materials, and removing asbestos materials. (Bobadilla Decl. ¶ 4; Martinez Decl. ¶ 4; Montero Decl. ¶ 2; Augusto Decl. ¶ 2; Lubas Decl. ¶ 5). Although Plaintiffs have alleged sufficient facts from their own personal experiences to demonstrate that they were similarly situated to other construction workers, roofers, and asbestos removal workers, because they do not identify the co-workers with whom they spoke (by job title), the Court has no basis to conclude that *all* other workers were subject to the unlawful policy. Certification of a collective of all former employees of the three Corporate Defendants would be inappropriate. *Cf. Feng*, 2016 WL 1070813, at *5 ("[T]o the extent Plaintiff seeks to include non-kitchen workers, such as delivery persons, servers, and busboys, he does not provide any factual support for his belief that these employees . . . were underpaid in the same way that Plaintiff alleges he and the co-workers with whom he spoke were[.]") (citation omitted); *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 115 (S.D.N.Y. 2015) ("Ms. Bittencourt provides little information about busboys, baristas, counter attendants, hostesses, and chefs beyond identifying them as potential class members. First, she does not provide information about the type of work performed by these various categories of potential opt-in plaintiffs. Second, with the exception of the baristas, who make more than the minimum wage, it is unclear what these employees'

17

base salary is or whether they are tipped employees."); *Kim*, 985 F. Supp. 2d at 451

("Although Kim has shown that he is situated similarly to the other Goat Town kitchen

staff members, he has not demonstrated a sufficient factual nexus between himself and

the non-kitchen staff. . . . Significantly, he does not allege that the Defendants paid these

additional employees a fixed weekly salary or that they were denied overtime

compensation.").  The collective will only include construction workers, roofers, and

asbestos removal workers.

B.  <u>Conditional Certification of Plaintiffs' Prevailing Wage Claims</u>

Plaintiffs also argue that employees subject to another unlawful wage policy—a

failure to pay prevailing (or union) wages—should be included in the collective.

(Proposed Notice at 2).  Plaintiffs assert that Defendants orally agreed to pay Plaintiffs

$70 per hour on public works projects, but in reality, they were paid only $25 per hour

no matter the type of project.  (TAC ¶ 112; Bobadilla Decl. ¶ 9; Martinez Decl. ¶ 9;

Montero Decl. ¶ 7; Augusto Decl. ¶ 7; Lubas ¶ 11).

FLSA "does not address liability for underpayment of hours at prevailing wage

rates."  *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003) (citing 29 U.S.C.

§ 206(a)(1)); *see also Grochowski v. Ajet Constr. Corp.*, No. 97-CV-6269, 2000 WL

1159640, at *3 (S.D.N.Y. Aug. 16, 2000) ("Our extensive research has not uncovered any

authority to support the proposition that the FLSA contains a mechanism to determine

the prevailing wage for the first forty hours of work per week.  The statute itself does not

address liability for underpayment of straight time hours at prevailing wage rates.").

"[W]hen plaintiffs who seek to recover unpaid wages were paid salaries at a rate higher

than the minimum wage in effect at the time of their employment, the FLSA is not

applicable." *Id.* at *4.[8]  As such, Plaintiffs' prevailing (union) wage claim cannot be included in their FLSA collective.

Under certain limited circumstances, courts in our Circuit have found that a viable FLSA claim exists where plaintiffs allege that defendants failed to pay them overtime wages based on the higher prevailing wage rate.  *See, e.g.*, *Sobczak v. AWL Industries Inc.*, 540 F. Supp. 2d 354, 361 (E.D.N.Y. 2007) (finding a valid claim under FLSA where plaintiffs alleged a violation for failure to pay overtime based on the prevailing wage in a state-funded contract); *Cortese v. Skanska USA Inc.*, No. 19-CV-11189, 2020 WL 2748438, at *7 (S.D.N.Y. 2020) (finding a valid FLSA claim where defendants failed to pay overtime wages based on the prevailing wage rate entitled to plaintiffs under contract).  This does not appear to be the nature of Plaintiffs' allegations.  Plaintiffs have repeatedly stated in their declarations that they were not paid prevailing wages, and that this itself is evidence of the unlawful wage and hour policy.  (*See, e.g.*, Lubas Decl. ¶ 11 ("I was supposed to receive a union-level wage of about over $70.00 per hour . . . . [H]owever, I was only ever compensated at $25 per hour[.]")).  The declarations do connect their prevailing wage claim to their overtime claims.

---

[8] A prevailing wage claim may be brought pursuant to  New York Labor Law, which dictate that employers must pay laborers working on public works projects, not less than the prevailing rate of wages for a day's work.  N.Y. Lab. Law § 220(3)(a).  The federal statutory equivalent is the Davis–Bacon Act, which governs prevailing wages for federally funded projects and "does not afford plaintiffs a private right of action but rather offers an administrative procedure to employees who believe they were not properly paid for work on such projects."  *Ajet Contr. Corp.*, 2000 WL 1159640, at *4.  However, such claims do not fit within a collective.  Plaintiffs must bring a motion for class certification of their state-law claims.  *Feng*, 2016 WL 1070813, at *4 ("Plaintiff improperly includes state-law claims as a basis for the FLSA collective action.  Collective actions under the FLSA encompass only FLSA violations.").

In any event, in the narrow circumstances where courts have permitted a FLSA claim for failure to pay overtime wages calculated off of the prevailing wage structure, the viability of such a claim turns on whether the underlying contract is a federal or state agreement.  *See, e.g.*, *Sobczak*, 540 F. Supp. 2d at 361.  Where the prevailing wage is based on a federal contract, the Second Circuit has held that Davis-Bacon Act precludes a FLSA overtime claim as it would only allow parties to circumvent the administrative mechanism of the Davis-Bacon Act.  *Supra* note 8; *Phoenix Contr.*, 318 F.3d at 87.  In contrast, where the entitlement to prevailing wages is based on a state contract, courts have allowed a FLSA claim for failure to pay overtime.  *See, e.g.*, *Sobczak*, 540 F. Supp. 2d at 361 ("As to their FLSA claims for overtime based upon federally funded contracts, to which Davis–Bacon applies, *Grochowski* precludes consideration of federal prevailing wage standards in determining plaintiffs' rights under the FLSA.  However, to the extent that plaintiffs' claims arise under state funded contracts, to which state prevailing wage standards apply, *Grochowski* has no application.").  Here, Plaintiffs do not explain if the prevailing wage rate is based upon a state or federal contract.  The operative complaint only mentions an oral contract.  (TAC ¶ 112).  No other terms or details are provided.  As such, even the narrow exception to the bar on prevailing wage claims being brought under FLSA—an overtime claim based on a prevailing wage rate— does not apply to Plaintiffs' allegations.

C.  <u>Defendants Who Should Be Included in the Collective</u>

JLS and SEG contend that any collective should not be certified against all Corporate Defendants.  Although JLS and SEG contend that they are two separate and distinct corporate entities, they do not dispute that the two companies have common ownership and management.  (JLS & SEG Resp. at 4, 6 (noting only that they do not

share common ownership or management with Defendant Guiliano LLC); Zabell Decl.
¶ 4).

This, however, standing alone would not be enough absent a showing that the
Plaintiffs were subject to a common policy when they worked for the two entities.
"[T]he question at this juncture is not whether the . . . [defendants] were part of the
same enterprise, but rather whether there was a uniform policy or practice." *Rojas v.
Kalesmeno Corp.*, No. 17-CV-164, 2017 WL 3085340, at *4 (S.D.N.Y. July 19, 2017)
(quotations omitted).  That is, though evidence of common ownership can help support
allegations of a uniform wage policy, evidence of this alone without more is insufficient.
*Id.* at *5 ("[E]vidence of common ownership is not evidence that the same unlawful
employment policy was in place at each of the restaurants." (quoting *Guaman*, 2013 WL
5745905, at *3) (quotations and brackets omitted)); *cf. Zhuo v. Jia Xing 39th Inc.*, No.
14-CV-2848, 2015 WL 1514950, at *4 (S.D.N.Y. April 1, 2015) (certifying collective
action over multiple locations based on affidavit where employee testified to common
ownership, management, and specific personal conversations with employees working
at other locations).

Ultimately, Plaintiffs do allege, and provide evidence, that they were subject to
the same policy—of not being compensated for all time worked, and not being paid
overtime—whether they worked for JLS or SEG.  And, their evidence supports an
inference that the policy to which they were subject had a common origin.  Plaintiffs
allege that JLS and SEG shared managerial employees whom worked interchangeably
between the two companies.  (TAC ¶¶ 20–23).  JLS also admits to hiring Lubas,
Bobadilla, Montero, and Martinez for the FIT Project; SEG admits to hiring Lubas for
the Waverly Project from 2017 to 2018.  (Zabell Decl. ¶¶ 5–7).  JLS and SEG each admit

to having employed at least one of the Plaintiffs for some period of time.  (*Id.*).  Their admissions correlate with these Plaintiffs' alleged periods of employment with JLS and SEG.  (Lubas Decl. ¶ 3 (noting that he was hired by SEG on July 2016); *Id.* ¶ 11 (alleging that he worked on the FIT project); Bobadilla Decl. ¶ 9 (same); Martinez Decl. ¶ 9 (same); Montero Decl. ¶ 7 (same)).

Taken together, the allegations of common ownership, management, shared employees, and Plaintiffs' multiple declarations based on firsthand experience of a common wage policy across these two companies, are sufficient to warrant notice being sent to these two locations.  *See, e.g.*, *Karic v. Major Auto. Co., Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (finding that plaintiffs' allegations of a common pay practice among the locations where they worked, "coupled with plaintiffs' claim that there is common ownership and control of all of these entities . . . is sufficient" to conditionally certify a class consisting of all of the entities).[9]

On the other hand, the Court finds it improper to include Guiliano LLC within the scope of the collective.  Lubas, Bobadilla, and Martinez are the only Plaintiffs whom allegedly worked for Guiliano LLC.  But aside from conclusory statements claiming that they were hired by the company and that Defendants did not pay them overtime wages, they have provided little to no evidence that they were subject to an unlawful wage policy by Guiliano LLC.

That is, Plaintiffs have not provided sufficient evidence to show that there was a uniform policy or practice across all *three* employers.  Referring to "Defendants"

_____

[9] JLS and SEG's contention that Plaintiffs failed to distinguish which of the two entities they worked for is insufficient to deny certification, in light of these defendants' admissions that they hired at least one of the Plaintiffs at one point in time, and their common ownership and management.

collectively, absent any other links is insufficient to bring Guiliano LLC into the collective.  Plaintiffs' only evidence is that there were managers whom allegedly worked interchangeably between Guiliano LLC and JLS and SEG.  (TAC ¶¶ 20–23).  That is not sufficient, in the absence of any evidence or allegation of common ownership or organization.  If anything, the evidence suggests that Guiliano LLC bears little to no liability for the allegations levelled by Plaintiffs.  Only three Plaintiffs—Lubas, Bobadilla, and Martinez—claim to have worked for Guiliano LLC.  And the only work project identified in Lubas, Bobadilla, and Martinez's declarations—the FIT project—occurred *after* their employment *ended* with Guiliano LLC.  (Lubas Decl. ¶ 11; Bobadilla Decl. ¶ 9; Martinez Decl. ¶ 9).  According to their declarations, the FIT project occurred from on or about June 2017 to September 2017, but they ceased employment with Guiliano LLC in 2016, 2016, and 2015 respectively.  (Lubas Decl. ¶ 1; Bobadilla Decl. ¶ 1; Martinez Decl. ¶ 1).  Further, there is no indication that any of the other alleged unlawful policies, such as the alleged waiting time in Jackson Heights, Queens, coincided with their employment with Guiliano LLC, as opposed to JLS and SEG.

The Court finds that Plaintiffs have not met their minimal burden to show that former employees of Guiliano LLC were similarly situated to putative collective members.  *See, e.g.*, *Urresta v. MBJ Cafeteria Corp.*, No. 10-CV-8277, 2011 U.S. Dist. LEXIS 120126, at *18–19, *26 (S.D.N.Y. Oct. 17, 2011) ("Particularly in cases involving Defendants that are separate corporate entities, Plaintiffs must provide some evidence of a common policy to violate the law. . . . Here, Plaintiffs have not provided sufficient evidence of a common policy to violate the law.  Plaintiffs' accompanying affidavits do not provide a factual demonstration of any common control or other element of joint-employer status.") (restricting distribution of notice to one defendant); *see also Castro*

*v. Spice Place, Inc.*, No. 07-CV-4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009)

("Some evidence of such a common policy to violate the law is particularly significant in

this case given that Defendant restaurants are six distinct New York corporations and

that defendants dispute plaintiffs' characterization of defendants as a joint employer

under the FLSA.").

II.    Notice Period

Finally, there is the question of the time period of the notice.  Plaintiffs ask that

the collective include employees from January 1, 2013, *i.e.* almost six years prior to the

filing of the initial Complaint, through the present.  (Compl. dated Nov. 19, 2018, Dkt.

No. 1).  JLS and SEG contend that because under FLSA, the statute of limitations is

three years for willful violations and two years for non-willful violations, 29 U.S.C. §

255(a), allowing a six-year notice period would allow Plaintiffs to send notice to

employees whose potential FLSA claims have long since been extinguished.  (JLS & SEG

Resp. at 7).  Plaintiffs counter that their NYLL claims entitle them to a six-year statute of

limitations, N.Y. Lab. Law §§ 663(1), (3).  (Reply in Further Supp. of Pls.' Mot. to Certify

dated Feb. 26, 2020, Dkt. No. 56 at 6–7).

The recent trend "is to approve three-year notice periods to avoid the confusion

caused by notifying plaintiffs who potentially have two disparate claims with different

statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose

claims may well be time-barred."  *Gurrieri v. Cty. of Nassau*, No. 16-CV-6983, 2019 WL

2233830, at *8 (E.D.N.Y. May 23, 2019) (quotations omitted); *see also McBeth v.

Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("[W]hile notice to

all former employees, going back six years, has been authorized where plaintiffs seek

relief under both the FLSA and the New York Labor Law, the growing trend in this

district appears to be limiting the notice period to three years." (quotations, alteration, and citations omitted)).  As numerous district courts have noted, "[i]t would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims.  Further, while a class for the state law claims may someday be certified, it is an opt-out, not an opt-in, class, so there is no danger of claim lapse." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (emphasis removed); *see also Gurrieri*, 2019 WL 2233830, at *8 ("It would therefore be unnecessarily confusing for employees who are ineligible for the FLSA opt-in class to receive a notice that pertains only to the FLSA claims. . . . Further, although the Court may eventually certify a class for the NYLL claims, that class would be opt-out, not opt-in, in nature.  Thus, those class members would face no risk of claim lapse, even if they did not receive notice of this case at this juncture.").  The Court agrees with this reasoning and finds that in this case, a six-year notice period is not appropriate.

As to whether a three-year or two-year notice should apply under FLSA, "at the conditional certification stage, a plaintiff need not provide evidence sufficient to establish willfulness in order for the three-year period to be utilized for notification purposes[.]" *Slamna v. API Rest. Corp.*, No. 12-CV-757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013).  "If appropriate, this Court can revisit any statute of limitations questions at a later stage." *Raimundi v. Astellas U.S. LLC*, No. 10-CV-5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27, 2011).  As a result, at this stage, it is appropriate to permit conditional certification of a class for a three-year period—and during a subsequent stage of the case, should Plaintiffs fail to demonstrate that Defendants acted willfully, employee claims' can be limited.

The three-year period solely for notice purposes should commence from the date of the filing of the complaint and not the date of this Court's order through the present. *See, e.g.*, *id.* (granting a notice period from three years prior to the filing of the Complaint through the entry of the Court's order granting conditional certification).

In light of the foregoing, the Court approves the conditional certification of a collective action as follows:

> All current and former construction workers, roofers, and asbestos removal workers of JLS Group, Inc. or SEG Maintenance, Inc. at any time between November 19, 2015 through the present.[10]

### CONCLUSION

For the reasons stated above, the motion for conditional certification of a collective action is granted in part. Plaintiffs may send notice to all current and former construction workers, roofers, and asbestos removal workers of JLS Group, Inc., or SEG Maintenance, Inc. for the three years prior to the filing of the Complaint. JLS and SEG are directed to provide the requested contact information to Plaintiffs' counsel by

---

[10] JLS and SEG argue that the "notice period should be limited to three years." (JLS & SEG Mem. at 7). However, the only arguments they raise are whether the three-year statute of limitations under FLSA or the six-year statute of limitations under the NYLL should apply, and whether that look back period should begin from the date of the Complaint or the date of the Court's order. (*Id.* at 7–8 ("The statute of limitations for an FLSA claim is two (2) years, or three (3) years. . . . Similarly, there is no reason to permit Plaintiffs to obtain information for employees going back six years without first requiring them to prove the more stringent standard of class certification under Fed. R. Civ. P 23 and the NYLL. . . . [C]ourts generally permit plaintiffs to send notice to those employed during the three-year period *prior* to the date of the Order or to the mailing of the notice." (emphasis added))). In other words, they make arguments regarding how far back the notice should go, but do not make any arguments about whether the notice period should extend to the present. Since none of the Defendants contest the Plaintiffs' request for a notice period until the present, the Court grants Plaintiffs' request for a notice period that extends to the present.

**August 21, 2020**.  The revised proposed notice to be sent to the potential opt-in

parties should also be submitted to the Court for final approval by **August 21, 2020**.

SO ORDERED.

*/s/ Sanket J. Bulsara* July 22, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

27