UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOZEF LUBAS, LEY ROBERT BOBADILLA, CESAR
AUGUSTO, MENISIO MARTINEZ, GEORGE COOPER,
JULIO DUQUE, DENNISE RUIZ, SEGUNDO YAURI,
and FRANCISCO URAGA,

                      Plaintiffs,

         -against-

JLS GROUP, INC., CHARLIE CORDERO, JOSE
ORDONES, STEVE SEKATO, GUILIANO BROTHERS,
LLC, GUILIANO ENVIRONMENTAL, LLC d/b/a
GUILIANO, CHRISTOPHER GUILIANO, "RICHARD,"
SEG MAINTENANCE INC., and JOSEPH FIGLIOLA,

                     Defendants.
----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18-CV-6611-DG-SJB

**BULSARA, United States Magistrate Judge:**

      Jozef Lubas ("Lubas") filed this Fair Labor Standards Act ("FLSA") and New York

Labor Law ("NYLL") action against a plethora of Defendants: JLS Group, Inc. ("JLS"),

Charlie Cordero ("Cordero"), Jose Ordones ("Ordones"), and Steve Sekato or Sucato

("Sekato", and collectively, the "JLS Defendants"); Guiliano Brothers, LLC and Guiliano

Environmental, LLC d/b/a Guiliano (collectively, "Guiliano Environmental"),

Christopher Guiliano ("Guiliano"), and "Richard" or "Richie" (last name unknown)

(collectively, the "Guiliano Defendants"); and SEG Maintenance, Inc. ("SEG") and

Joseph Figliola ("Figliola," and collectively, the "SEG Defendants").[1]  Lubas and his co-

plaintiffs—Ley Robert Bobadilla ("Bobadilla"), Cesar Augusto ("Augusto"), and Menisio

Martinez ("Martinez")—allege that the three sets of Defendants jointly employed them

and other construction workers, roofers, and asbestos removal workers.  (*See* TAC ¶¶ 11,

---

[1] Third Am. Compl. dated Aug. 15, 2019 ("TAC"), Dkt. No. 41.

39, 172–78).  On July 22, 2020, the Court conditionally certified a collective, (Order

dated July 22, 2020 ("Collective Order"), Dkt. No. 60); subsequently, five plaintiffs

joined the action: George Cooper ("Cooper"), Julio Duque ("Duque"), Dennise Ruiz

("Ruiz"), Segundo Yauri ("Yauri"), and Francisco Uraga ("Uraga").  (Dkt. Nos. 73, 86,

89, 92, 98).[2]

    Plaintiffs and the JLS and SEG Defendants (the "Moving Defendants") filed

cross-motions for partial summary judgment.  (Defs.' Mot. for Summ. J. dated Sept. 27,

2023, Dkt. No. 192; Pls.' Mot. for Summ. J. dated Sept. 27, 2023, Dkt. No. 195).  The

Guiliano Defendants attempted to resolve the claims against them via settlement, a

motion which is addressed separately.  For the reasons described below, the Court

recommends granting the Moving Defendants' motion in part and denying Plaintiffs'

motion in its entirety.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

    A "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v.*

---

[2] Opt-in Plaintiff Geovanny Montero's claims were dismissed after his death in
2021.  (Order Adopting R. & R. dated Apr. 26, 2023).  Opt-in Plaintiff Danny Diaz filed a
stipulation of discontinuance with all Defendants and was dismissed from the case.
(Order Dismissing Parties dated Jan. 28, 2022).  Several other opt-in plaintiffs were also
dismissed from the case without prejudice for failure to respond to discovery or
participate in the action.  (*See* Order dated Dec. 17, 2021, Dkt. No. 142).  The plaintiffs
who remain in this case—and who move for summary judgment—are Lubas (lead
plaintiff); Bobadilla, Augusto, and Martinez (co-plaintiffs); and Cooper, Duque, Ruiz,
Yauri, and Uraga (opt-in plaintiffs).  The Court refers to Lubas, Bobadilla, Augusto,
Martinez, Cooper, Duque, Ruiz, Yauri, and Uraga as "Plaintiffs."

*Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021).  Accordingly, "a district court is not required to grant judgment as a matter of law for one side or the other." *Id.* (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  The Court must examine each party's motion and draw all reasonable inferences against the party whose motion is under consideration.  *Id.*

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  Where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims.  *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation).  In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses.  *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).  Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded."  *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix

factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1.  The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence.  *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  The Court must also disregard conclusory denials that lack citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.  They should contain factual assertions, with citation to the record.  They should not contain conclusions*[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).

The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began with a single plaintiff asserting wage and hour claims against three corporate employers. It has ballooned into a multi-plaintiff collective against multiple corporate and individual employers, which Plaintiffs contend are a single, massive joint employment operation. (*See* Mem. of Law in Supp. of JLS Defs.' Mot. for Summ. J. ("Defs.' Mem. of Law"), Dkt. No. 192-1 at 1). The Court's ability to resolve the merits of the case has been hindered by unprofessional conduct by counsel,[3] frivolous discovery disputes,[4] and a failure to abide by the Court's rules.[5] After filtering away the noise, the Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—as undisputed unless otherwise noted.[6]

---

[3] *See, e.g.*, Order dated June 3, 2021 ("The docket in this case is replete with examples of unprofessional and discourteous conduct on all sides. . . . [T]he Court is uninterested in carping between counsel, and should either party fail to accord itself consistent with the applicable rules of professionalism and decorum, the Court will not hesitate to impose sanctions." (citation omitted)).

[4] *See, e.g.*, Order dated Nov. 10, 2021 ("The Court has now received two separate calls during the deposition of Mr. Uraga. The second dispute raises issues that border on the frivolous and unprofessional."); Order dated Jan. 19, 2022 ("This is the fourth call to the Court during a deposition in this case. Again, it appears that parties are calling the Court with matters that do not require Court intervention . . . . No further calls to the Court during depositions are permitted.").

[5] *See, e.g.*, Order dated Jan. 19, 2022 ("This pattern of misbehavior and impertinence risks a mutual referral to the disciplinary committee of the Eastern District of New York."); Order dated Jan. 25, 2022 ("The Court is not amused by Defendants' repetitive filings that attempt to consistently have another word on a motion that is already fully briefed.").

[6] JLS Defs.' Rule 56.1 Statement of Material Facts ("Defs.' 56.1 Stmt."), Dkt. No. 192-2; Pls.' 56.1 Counterstatement of Material Facts ("Pls.' Counter-Stmt."), Dkt. No. 196-1; JLS Defs.' Rule 56.1 Reply Statement of Material Facts ("Defs.' Reply 56.1 Stmt."), Dkt. No. 194-1; Pls.' 56.1 Statement of Material Facts ("Pls.' 56.1 Stmt."), Dkt. No. 195-2;

JLS is a Queens-based company founded in 2016 that specializes in construction and asbestos removal.  (Defs.' 56.1 Stmt. ¶ 1; Pls.' Counter-Stmt. ¶ 1; Pls.' 56.1 Stmt. ¶ 1; Defs.' Counter-Stmt. ¶ 1; Charlie Cordero Dep. ("Cordero Dep."), attached as Ex. K to Eden Decl., Dkt. No. 192-14 at 36:4–10).  Cordero and Ordones are fifty-percent shareholders of JLS, and Sekato is a project manager.  (Defs.' 56.1 Stmt. ¶¶ 2–4; Pls.' Counter-Stmt. ¶¶ 2–4, 73, 78; Defs.' Reply 56.1 Stmt. ¶ 73; Pls.' 56.1 Stmt. ¶ 3; Defs.' Counter-Stmt. ¶¶ 2–3).[7]  Sekato is also a supervisor with general hiring and firing authority at JLS.  (Id. ¶ 6; Pls.' 56.1 Stmt. ¶¶ 6, 10).

SEG is a Brooklyn-based company that also specializes in asbestos removal, cleaning, and home improvement, and it has worked with JLS sporadically on projects.  (Defs.' 56.1 Stmt. ¶ 9; Pls.' Counter-Stmt. ¶ 9; Robert Gentile Dep. ("Gentile Dep."), attached as Ex. M to Eden Decl., Dkt. No. 192-16 at 25:7–16).  Figliola is the sole owner of SEG, and Robert Gentile ("Gentile") is a manager and "second in charge" at SEG.  (Defs.' 56.1 Stmt. ¶¶ 6, 8; Pls.' Counter-Stmt. ¶¶ 6, 8, 73; Defs.' Reply 56.1 Stmt. ¶ 73; Pl.'s 56.1 Stmt. ¶ 12; Defs.' Counter-Stmt. ¶ 12).  Cordero has never been an owner, officer, or director of SEG.  (Defs.' 56.1 Stmt. ¶ 7; Pls.' Counter-Stmt. ¶ 7).

Guiliano Environmental is made up of several entities that operate in upstate New York and primarily do construction work on roofs and building interiors.  (See

---

JLS Defs.' 56.1 Counterstatement of Material Facts ("Defs.' Counter-Stmt."), Dkt. No. 198-1.  The evidence that the parties rely on is attached to their declarations.  (Decl. of Ryan M. Eden in Supp. of JLS Defs.' Mot. for Summ. J. ("Eden Decl."), Dkt. No. 192-3; Decl. of Darius A. Marzec in Supp. of Pls.' Mot. for Summ. J. ("Marzec Decl."), Dkt. No. 195-3).

[7] If one side's citation is omitted, the Court has concluded that its 56.1 statement failed to demonstrate by citation to admissible evidence an actual material fact in dispute.

Jozef Lubas Dep. ("Lubas Dep."), attached as Ex. B to Eden Decl., Dkt. No. 192-5 at 158:23–159:6, 162:12–17).  Christopher Guiliano is an owner and officer of Guiliano Environmental.  (*See* TAC ¶ 26; *see* Cordero Dep. at 81:23–82:7).  Guiliano Environmental does not share ownership or have a corporate relationship with JLS or SEG.  (Defs.' 56.1 Stmt. ¶¶ 11–14).

Plaintiffs are current and former construction workers who each allege they were employed by the JLS, SEG, and/or Guiliano Defendants.  (TAC ¶ 2).  Plaintiffs regularly reported to work in Jackson Heights, Queens; their employer would then transport them to a designated construction worksite.  (*Id.* ¶¶ 67–69).  Many of the Plaintiffs worked at the Fashion Institute of Technology ("FIT") project worksite.  (*See id.* ¶ 80).

It is here that the parties' accounts—and theories of the case—diverge.  Plaintiffs allege that the JLS, SEG, and Guiliano Defendants were joint employers that employed all plaintiffs interchangeably at one time or another, and thus, are jointly liable for any FLSA and NYLL violations.  (*See id.* ¶¶ 20, 39; Pls.' Mem. of Law in Supp. of Mot. for Summ. J. ("Pls.' Mem. of Law"), Dkt. No. 195-1 at 8–11).  Plaintiffs do not dispute that most of them did not work for all three corporate Defendants: for instance, it is undisputed that Bobadilla and Duque did not work for SEG, (Defs.' 56.1 Stmt. ¶¶ 16, 39; Pls.' Counter-Stmt. ¶¶ 16, 39), and that Augusto and Cooper had never heard of SEG, (*id.* ¶¶ 26, 32; Defs.' 56.1 Stmt. ¶¶ 26, 32).  They also concede that Uraga was supervised by Yauri (another plaintiff) and was only paid by JLS.  (*Id.* ¶¶ 71–72; Pls.' Counter-Stmt. ¶¶ 71–72).

Plaintiffs nonetheless seek to hold all the Moving Defendants liable for unpaid overtime and unpaid wages, as well as for statutory violations under NYLL for failure to provide wage notices and wage statements, and for failure to keep employment records

for the requisite six years.  (*See generally* Pls.' Mem. of Law).  Plaintiffs point to the Moving Defendants' failure to provide wage notices and statements in discovery as evidence of their non-existence, and thus, they seek summary judgment on those claims. (*Id.* at 11–13; Pls.' 56.1 Stmt. ¶¶ 18–21).  Lastly, Plaintiffs claim that all Defendants breached an alleged oral contract to pay them prevailing or union-level wages, (TAC ¶¶ 187–91; *see also* Collective Order at 6); in the alternative, they seek quantum meruit for the "reasonable value for their services," as they had a reasonable expectation of payment for their work.  (TAC ¶¶ 223–28).

In their briefs and Rule 56.1 statements, the Moving Defendants do concede that there were employment relationships between some of the corporate Defendants and Plaintiffs; however, they contest Plaintiffs' claim that they all operated as a single integrated enterprise.  (*See* Defs.' 56.1 Stmt. ¶¶ 11–14, 30; *e.g.*, *id.* ¶ 11 ("Lubas testified that there was no relationship between JLS and Guiliano.")).  They concede—and it is thus undisputed—that Lubas worked for JLS, Guiliano Environmental, and SEG, but they contest Plaintiffs' claim that the rest of the Plaintiffs also worked for SEG.  (*See id.* ¶¶ 10, 16, 26, 32, 39, 58, 60, 72; Defs.' Reply 56.1 Stmt. ¶ 74; *see also* Defs.' Mem. of Law at 7–9; Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp'n"), Dkt. No. 198 at 3–4).  The Moving Defendants also argue that Martinez only worked for Guiliano Environmental and JLS, but not SEG, and that Ruiz and Yauri only worked for JLS. (Defs.' 56.1 Stmt. ¶¶ 27–29, 58, 60; *see also* Defs.' Mem. of Law at 5).  The Moving Defendants also contest Plaintiffs' claim that individual Defendants Cordero, Ordones, Sekato, and Figliola were employers of any Plaintiff.  (*See id.* at 3–4; Defs.' Opp'n at 5–8).  The Moving Defendants argue that Cordero, Ordones, and Sekato were not employers, which Plaintiffs dispute, (*id.* at 8); they also point to undisputed facts that no

Plaintiff ever claimed to work for or even know Figliola, (Defs.' 56.1 Stmt. ¶ 45; Pls.' Counter-Stmt. ¶ 45; Defs.' Reply Stmt. ¶ 77; Defs.' Counter-Stmt. ¶¶ 13, 15–16; *see also* Defs.' Mem. of Law at 3–4).

The Moving Defendants also advance certain undisputed facts related to two opt-in plaintiffs: Duque and Cooper. Duque testified that he worked for JLS in 2016 and 2018, and for Guiliano Environmental in 2017 and 2018; he never worked for SEG. (Defs.' 56.1 Stmt. ¶¶ 39–42; Pls.' Counter-Stmt. ¶¶ 39–42). When Duque worked for JLS, he worked from 8:00 A.M. to 4:30 P.M. every day, five days per week, with a 30-minute unpaid lunch break each day. (*Id.* ¶¶ 40, 46–48; Defs.' 56.1 Stmt. ¶¶ 40, 46–48). He did not work longer than 40 hours per week. (*Id.* ¶ 49; Pls.' Counter-Stmt. ¶ 49). Duque was paid $25.00 per hour by JLS, and his paychecks reflected that rate. (*Id.* ¶¶ 51, 53; Defs.' 56.1 Stmt. ¶¶ 51, 53). Cooper only worked for JLS; he did not work for SEG or Guiliano Environmental. (*Id.* ¶¶ 32–33; Pls.' Counter-Stmt. ¶¶ 32–33). JLS paid Cooper between $20.00 and $25.00 per hour throughout his employment. (George Cooper Dep. ("Cooper Dep."), attached as Ex. F to Eden Decl, Dkt. No. 192-9 at 46:19–23). And as with Duque, Cooper also never worked more than 40 hours per week. (Defs.' 56.1 Stmt. ¶ 36; Pls.' 56.1 Stmt. ¶ 36). In light of these undisputed facts, the Moving Defendants argue that Duque and Cooper cannot sustain a FLSA or NYLL unpaid wage claim. (Defs.' Mem. of Law at 10–14).

The Moving Defendants also dispute Plaintiffs' allegations that they failed to comply with New York's Wage Theft Protection Act ("WTPA") by not providing wage notices and wage statements, and failing to keep records for the requisite six years. (Defs.' Opp'n at 8–13). They argue that there were various notices posted at the FIT project worksite, including "prevailing wage postings." (*Id.* at 10–11; Defs.' Counter-

Stmt. ¶ 18).  As to the wage statement violations, the JLS Defendants assert the affirmative defense, as pled in their Answer, (Answer dated Aug. 28, 2019 ("Answer"), Dkt. No. 44 at 20–21), that they made "complete and timely payment of all wages," NYLL § 198(1-b), which would be a complete defense to Plaintiffs' wage statement claim. (Defs.' Opp'n at 11–12).  Lastly, the Moving Defendants oppose Plaintiffs' recordkeeping claim on the grounds that there exists no private right of action to enforce an employer's failure to keep records.  (*Id.* at 12–13).

The multitude of plaintiffs and defendants in this case necessitates a guide for understanding the parties.  The Court has created the chart below to assist in this effort. The chart reflects the three corporate Defendants, their corresponding individual owners and/or managers, and which of them each Plaintiff alleged to have worked for. The solid arrow lines next to each Plaintiff's name reflect that it is undisputed that that Plaintiff worked for that Defendant; the dashed arrow line reflects an ambiguity in the record.

| Defendants | | |
|---|---|---|
| **JLS** | **Guiliano Environmental** | **SEG** |
| Ordones | Guiliano | Figliola |
| Cordero | "Richie" [LNU] | |
| Sekato | | |
| **Plaintiffs** | | |
| ←——————————— Lubas ———————————→ | | |
| ←———————— Bobadilla ————————→ | | |
| ←———————— Martinez ————————→ | | |
| ←———————— Duque ————————→ | | |
| ←——— Augusto ———→ | – – – – – – – – – → | |
| ←——— Cooper ———→ | | |
| ←——— Ruiz ———→ | | |
| ←——— Uraga ———→ | | |
| ←——— Yauri ———→ | | |

On July 22, 2020, the case was conditionally certified as a collective.  (Collective Order).  The Court conditionally certified a collective action of "[a]ll current and former construction workers, roofers, and asbestos removal workers" who were employed by JLS or SEG "at any time between November 19, 2015" and the date of the order, July 22, 2020.  (*Id.* at 26).  The Court granted Plaintiffs' motion to conditionally certify a collective as to JLS's and SEG's alleged failure to pay overtime wages and wages for time worked under FLSA.  (*Id.* at 14–15).  However, the Court declined to certify the collective as to Plaintiffs' prevailing wage claims, whether brought under NYLL or a breach of contract theory.  (*Id.* at 18–20 & n.8).  The Court noted that state law claims under NYLL "do not fit within a collective" and that Plaintiffs "must bring a motion for class certification of their state-law claims."  (*Id.* at 19 n.8).

Some time on or around March 2023, the Guiliano Defendants reached a settlement with three of the plaintiffs—Lubas, Bobadilla, and Martinez.  (*See* Minute Entry & Order dated Mar. 7, 2023; Fourth Mot. for Settlement dated Sept. 6, 2023, Dkt. No. 191).  Plaintiffs and the JLS and SEG Defendants filed cross-motions for summary judgment on September 27, 2023; the Guiliano Defendants did not file any summary judgment motion.  The Court addresses these cross-motions in turn.

DISCUSSION

I.   <u>JLS and SEG Defendants' Motion for Partial Summary Judgment</u>

The JLS and SEG Defendants move for summary judgment on five grounds: (1) the FLSA and NYLL claims of every Plaintiff (except Lubas) must be dismissed against SEG; (2) the FLSA and NYLL claims of every Plaintiff must be dismissed against Figliola; (3) all of Duque's FLSA and NYLL claims must be dismissed as to every Defendant; (4) all of Cooper's FLSA and NYLL claims must be dismissed as to every

Defendant; and (5) the JLS Defendants cannot be held liable for violations alleged to have taken place during the time Plaintiffs worked for the Guiliano Defendants.  (*See* Defs.' Mem. of Law at 15).  The Court recommends granting the motion in part and denying it in part.

Under FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  An individual may be jointly and severally liable to an employee under FLSA where the individual exercises "operational control" over that employee.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Id.*  "In identifying the persons or entities who qualify as 'employers,' . . . statutory definitions sweep broadly."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).

In making this determination, the "economic reality" of the employment relationship is the core of the inquiry.  *Irizarry*, 722 F.3d at 104.  That is, courts look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotations omitted); *see, e.g.*, *Irizarry*, 722 F.3d at 110 (applying *Carter*); *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) ("Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing

the employee's paycheck or directly hiring the employees." (quotations omitted)) (collecting cases).

"[T]he 'economic reality' test encompasses the totality of the circumstances," and no single factor is dispositive. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). New York courts interpret the definition of "employer" under NYLL coextensively with the definition under FLSA. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011).[8]

A.   Plaintiffs' FLSA, NYLL, and WTPA Claims Against SEG

The Moving Defendants seek dismissal of all Plaintiffs' FLSA and NYLL claims against SEG, except Lubas's. (Defs.' Mem. of Law at 4).

SEG concedes that it employed Lubas, (Defs.' Counter-Stmt. ¶¶ 13, 16), but it contends there is no evidence to show that it employed any other Plaintiff. (Defs.' Mem. of Law at 4–6). SEG is correct: no Plaintiff other than Lubas worked for SEG. Bobadilla and Duque testified that they never worked for SEG. (Defs.' 56.1 Stmt. ¶¶ 16, 39; Pls.' Counter-Stmt. ¶¶ 16, 39). Augusto and Cooper testified that they had never even heard of SEG. (*Id.* ¶¶ 26, 32; Defs.' 56.1 Stmt. ¶¶ 26, 32). Martinez testified that he worked for Guiliano Environmental in 2014 and JLS from 2016 to 2017 but made no mention of SEG. (*Id.* ¶¶ 27–29; Pls.' Counter-Stmt. ¶¶ 27–29; Menisio Martinez Dep. ("Martinez Dep."), attached as Ex. E to Eden Decl., Dkt. No. 192-8 at 31:6–8, 32:18–20). Ruiz testified that she is only pursuing claims against JLS, and Yauri testified that he only worked for "JLL," not SEG. (Defs.' 56.1 Stmt. ¶¶ 58, 60; Pls.' Counter-Stmt. ¶ 60).

---

[8] NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service," or "any individual . . . acting as employer." NYLL §§ 190(3), 651(6).

Finally, Uraga testified that he worked for JLS, was only paid by JLS, and was supervised by Cordero and Yauri, who had no affiliation with SEG.  (*Id.* ¶¶ 71–72; Defs.' 56.1 Stmt. ¶¶ 71–72; Francisco Uraga Dep. ("Uraga Dep."), attached as Ex. J to Eden Decl., Dkt. No. 192-12 at 27:5–6, 28:21–23, 56:19–23).  Thus, the undisputed record shows that SEG did not employ any of the Plaintiffs besides Lubas.[9]

Plaintiffs argue—in their opposition and in their own motion—that SEG must still be liable as an employer under the joint employer or "single integrated enterprise" theory.  (*See* Pls.' Opp'n at 7–9; Pls.' Mem. of Law at 1, 10–11).  "The joint employer doctrine, along with the 'single employer' (or 'single integrated employer') doctrines have been developed to allow a plaintiff to assert employer liability in the employment . . . context against entities that are not her formal, direct employer."  *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (quotations omitted).  Under the single integrated enterprise theory, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."  *Id.* (quotations omitted).  Courts in this Circuit have agreed that the single enterprise theory can be a basis for imposing FLSA liability on entities for whom a party did not

---

[9] Plaintiffs argue that the statements made by Plaintiffs during their depositions constitute "lay testimony" that is inadmissible because the Moving Defendants "[have not made] any showing whatsoever that any Plaintiff has any idea of the meanings of the terms 'employer' and 'joint employer' as used in the FLSA and NYLL."  (Pls.' Mem. of Law in Opp'n to JLS Defs.' Mot. for Summ J. ("Pls.' Opp'n"), Dkt. No. 196 at 5–6).  This is a frivolous argument.  During their depositions, Plaintiffs were not asked to present legal conclusions as to whether these entities were their legal employers, but rather, to answer questions on their knowledge (or lack thereof) of the corporate and individual Defendants.  Plaintiffs do not rebut or dispute their own testimony that they did not know or work for SEG, which compels the conclusion that SEG was not their employer.

work for directly, given the statute's definition of an "employer." *Syed v. S&P Pharmacy Corp.*, No. 21-CV-6000, 2023 WL 2614212, at *2 (E.D.N.Y. Mar. 23, 2023) (collecting cases); *see, e.g.*, *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586–87 (S.D.N.Y. 2020) (applying single enterprise theory to FLSA claim).  To allege liability under a single enterprise theory, a plaintiff must demonstrate facts under the following factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Huer Huang*, 459 F. Supp. 3d at 586 (quotations omitted); *see, e.g.*, *Ding v. Mask Pot*, No. 20-CV-6076, 2022 WL 4647847, at *3 (E.D.N.Y. Oct. 1, 2022) (applying the factors under the single integrated enterprise doctrine).[10]

Despite Plaintiffs' plea to the doctrine, there is no factual support for SEG's liability under these factors.  Figliola is the sole owner of SEG.  (Defs.' 56.1 Stmt. ¶ 6; Pls.' Counter-Stmt. ¶ 6; Pls.' 56.1 Stmt. ¶ 12; Defs.' Counter-Stmt. ¶ 12).  And no individual JLS Defendant—Ordones, Cordero, or Sekato—is alleged to own any portion of SEG or vice versa.  (*E.g.*, Defs.' 56.1 Stmt. ¶¶ 2, 7; Pls.' Counter-Stmt. ¶¶ 2, 7).  Under this record, there is no basis to conclude there is common ownership of JLS and SEG.  Furthermore, Plaintiffs have pointed to no evidence in the record to show that there is any interrelation of operations or common management between JLS and SEG.  (Pls.' Opp'n at 8); *see, e.g.*, *Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 62–63 (E.D.N.Y. 2021) (denying claim that entities were a single integrated enterprise

---

[10] Courts have applied the same factors to determine whether two or more entities constitute a single integrated enterprise under NYLL.  *See Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *11 (E.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, 2022 WL 985836, at *3 (Mar. 31, 2022).

where there was no evidence that the entities shared records, equipment, bank accounts, or lines of credit).

As to the "central concern" of the single integrated enterprise inquiry—the fourth factor, shared control of labor relations—there is also no evidence to support Plaintiffs' argument. *See Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).   Plaintiffs argue that there was a shared labor force because some of the Plaintiffs worked for both JLS and SEG. (*See* Pls.' Opp'n at 8 ("Mr. Lubas testified that JLS and SEG were separate employers, that both entities employed Mr. Lubas and that Mr. Lubas was paid the same rate of pay per hour by both entities.")).   However, they have identified only a single employee— Lubas—who worked for both companies.   That is not a "shared labor force."   The existence of a single person working for two separate companies while being paid the same by both is insufficient, standing alone, to make the companies a "single enterprise."   And in the face of the complete absence of any other evidence (for instance, common ownership or management), there is not a single enterprise.   Rather, there is a single person who, for some period of time, worked for two companies, and not even at the same time.

Accordingly, the Court recommends the granting of the Moving Defendants' partial summary judgment motion seeking dismissal of all Plaintiffs' (except Lubas's) FLSA, NYLL, and WTPA claims against SEG.[11]

---

[11] As a non-employer, SEG cannot be liable under FLSA or NYLL for overtime and unpaid wage violations.   It also cannot be liable under the WTPA.   *See generally* NYLL § 195 ("Every *employer* shall . . . provide his or her employees . . . a [wage] notice[.]" (emphasis added)).   With respect to Plaintiffs' breach of contract and quantum meruit claims (which are asserted by all Plaintiffs against all Defendants, *see infra* at pp. 22–

B.     Plaintiffs' FLSA, NYLL, and WTPA Claims Against Figliola

For the same reasons that the FLSA and NYLL claims against SEG must be dismissed, all FLSA, NYLL, and WTPA claims—including Lubas's—against Figliola, its sole owner, must be dismissed.

The record is undisputed that no Plaintiff ever claimed to work for—or even know—Figliola.  (*E.g.*, Defs.' 56.1 Stmt. ¶ 45, ("Mr. Duque does not know who Joseph Figliola is."); Pls.' Counter-Stmt. ¶ 45; Defs.' Reply 56.1 Stmt. ¶ 77; *see also* Defs.' Mem. of Law at 3–4).  The only Plaintiff whose claims remain against SEG, Lubas, testified that he did not know Figliola.  (Defs.' Reply 56.1 Stmt. ¶ 77; Defs.' Counter-Stmt. ¶¶ 13, 15–16; Lubas Dep. at 66:22–24 ("Q.  Do you know who Joseph Figliola is?  A.  No.")).  Although an individual need not "directly come into contact with the plaintiffs, their workplaces, or their schedules" to qualify as an employer, *Irizarry*, 722 F.3d at 110, Plaintiffs' lack of knowledge of Figliola and the complete absence of evidence suggesting any interactions with any Plaintiff makes it impossible for him to be held liable as an employer.  *See id.* at 107 ("[A] company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA 'employer.'"); *e.g.*, *Weng v. HungryPanda US, Inc.*, No. 19-CV-11882, 2022 WL 292799, at *6 (S.D.N.Y. Jan. 31, 2022) ("[A]s a general matter, corporate officers and

---

23), the Moving Defendants do not move for summary judgment.  (*See* Defs.' Mem. of Law at 4).

There is likely a valid basis to dismiss these claims.  But the Moving Defendants do not cite to any portion to the record to support a dismissal of these claims, nor do they make any such arguments in their briefs.  For instance, they do not argue that because there is no underlying wage or overtime violation, Plaintiffs cannot sustain a breach of contract claim for the same conduct.  It is not the Court's province to make motions that a party chooses not to make on its own behalf.

owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees." (quotations omitted)); *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-840, 2021 WL 634717, at *8 (S.D.N.Y. Feb. 16, 2021) ("Plaintiffs' assertion that Bin Hu was a shareholder and owner of Shun Lee Palace and Shun Lee West, by itself, does not establish employer status."). Thus, the Court recommends that summary judgment be entered in Figliola's favor on all Plaintiffs' FLSA, NYLL, and WTPA claims.[12]

C.      Plaintiff Duque's Claims Against the JLS Defendants

The JLS Defendants move for summary judgment to be entered in their favor on Duque's FLSA overtime and minimum wage claims because he did not work more than 40 hours a week, and he was paid in excess of the minimum wage. (Defs.' Mem. of Law at 9–10). The Court recommends that summary judgment be granted as to Duque's FLSA and NYLL overtime and minimum wage claims. (*See* TAC ¶¶ 186–91, 222–34).[13]

Duque cannot establish an overtime or unpaid wages violation. To defeat a defendant's motion for summary judgment on FLSA claims, in the absence of time records, "an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'"

---

[12] As with SEG, as a non-employer, Figliola cannot be liable under FLSA, NYLL, or WTPA; however, Plaintiffs' breach of contract and quantum meruit claims against him remain. *See supra* at n.11.

[13] Since the Court has already dismissed Duque's FLSA, NYLL, and WTPA claims against SEG and its owner, Figliola, the only remaining Moving Defendants for any FLSA or NYLL claim brought by Duque are the JLS Defendants.

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)) (collecting cases).  This is not a high bar; indeed, "it is possible for a plaintiff to meet this burden through estimates based on his own recollection."  *Id.*  Yet Duque has failed to come forward with any evidence with respect to FLSA or NYLL liability against any of the JLS Defendants.  Duque testified that when he worked for JLS in 2016 and 2018, he worked from 8:00 A.M. to 4:30 P.M. each day, five days per week, with a 30-minute, unpaid lunch break each day.  (Defs.' 56.1 Stmt. ¶¶ 40, 46–48; Pls.' Counter-Stmt. ¶¶ 40, 46–48).[14]  This testimony—which amounts to Duque working exactly 40 hours per week—confirms that he did not work any overtime.  (*Id.* ¶ 49; Defs.' 56.1 Stmt. ¶ 49).  This undisputed record prevents Duque from pursuing a FLSA or NYLL overtime claim against JLS or its owners or supervisors.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."); *see, e.g.*, *McNamara v. Associated Press*, 40 F. Supp. 3d 345, 353 (S.D.N.Y. 2014) (granting defendant's motion for summary judgement on plaintiff's overtime claims because "[p]laintiff has not offered any evidence that she worked more than forty hours in a given workweek").

---

[14] Employers are entitled to provide their employees with an uncompensated lunch break.  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) ("Under both the FLSA and NYLL, all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." (quotations omitted)), *aff'd*, 752 F. App'x 33, 37 (2d Cir. 2018).  For time to qualify as a "bona fide meal period" which is uncompensated, an employee must be "completely relieved from duty."  *Id.*  Duque does not allege that he was required to work during his uncompensated lunch break.

As for his minimum wage claim, Duque testified that he was regularly paid $25.00 per hour when he worked for JLS and that his paychecks reflected all the hours that he worked.  (Defs.' 56.1 Stmt. ¶¶ 51, 53; Pls.' Counter-Stmt. ¶¶ 51, 53).  This is higher than the minimum wage required under FLSA and NYLL in 2016 and 2018.  *See History of the Minimum Wage in New York State*, N.Y. State Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited July 1, 2024).  In 2016, the minimum wage for all employees in New York State was $9.00 per hour, *see id.*, and in 2018, the applicable minimum wage for New York City employers with 11 or more employees was $13.00 per hour, *see id.*  The JLS Defendants employed more than 11 employees each when Duque worked for them.  (*See* TAC ¶¶ 53, 57 (estimating that JLS employed more than 60 people and SEG employed more than 70 people); *see also* JLS Defs.' Responses to Pls.' Document Requests, attached as Ex. E to Marzec Decl., Dkt. No. 195-8 (showing JLS employee payroll reports with more than 11 employees)).  Duque was thus paid more than the minimum wage.  *See, e.g.*, *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 242–43 (S.D.N.Y. 2015) ("[A]n employee cannot state a claim for a minimum wage violation unless his average hourly wage falls below the . . . minimum wage." (quotations, alteration, and emphasis omitted)).

Duque's opposition to these dispositive arguments is threadbare and borders on the nonexistent.  Plaintiffs seem to argue that because the Moving Defendants allegedly did not produce certain, allegedly responsive, documents in discovery, they should be precluded from summary judgment.  (*See* Pls.' Opp'n at 6–10).  If Defendants failed to produce documents, Duque should have moved to compel; if the motion was successful, and if Defendants then failed to produce documents in face of a court order, Duque

would almost certainly be entitled to an adverse inference. *E.g.*, *Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 661 (2d Cir. 2018) (finding the district court did not abuse its discretion in imposing adverse inference sanctions where defendants failed to comply with discovery obligations). But having failed to take those predicate steps, Duque cannot now use alleged discovery violations to oppose the motion for summary judgment on his FLSA and NYLL claims. *See Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 452 n.1 (S.D.N.Y. 2012) ("[P]laintiffs may not defeat a motion for summary judgment by arguing that the defendants acted improperly during discovery because the plaintiffs have failed to make any motions to compel the discovery they sought and failed to obtain any sanctions rulings in the course of discovery.") (collecting cases).

But as to Duque's other claims—for breach of contract and quantum meruit—the JLS Defendants are not entitled to summary judgment. Their sole argument is that as an opt-in plaintiff, Duque's claims are limited to those arising under FLSA. (Defs.' Mem. of Law at 9, 11). In other words, the JLS Defendants argue that the procedural mechanism of how an opt-in plaintiff entered the case determines the substantive content of their claims. So, according to them, Duque has no breach of contract or quantum meruit claim, only a FLSA claim. This argument has no legal merit and is based on a misapprehension of how a collective certification works. FLSA's collective action mechanism primarily functions as a "'case management' device that, in the first instance, facilitates notice to potential plaintiffs," pursuant to which they can decide whether to join a lawsuit. *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 278 (E.D.N.Y. 2020). And when an opt-in plaintiff joins a case, they "ha[ve] *party status.*" *Id.* (quoting 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice*

and *Procedure* § 1807 (3d ed. 2010)). As a party, they are deemed to have asserted all the claims of each of the other parties—not just FLSA claims. *Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 262 (N.D.N.Y. 2009) ("[The] statutory language [in FLSA § 216(b)] indicates that once a potential plaintiff opts in, that person is a party to the *action*, not just to a *claim*."). In addition, the opt-in form here made reference to both federal and state claims, not just FLSA claims. (Proposed Opt-In Notice dated Feb. 12, 2020, attached as Ex. E to Decl. of Darius A. Marzec in Supp. of Mot. to Certify FLSA Collective Action, Dkt. No. 53-12 at 2 ("What is this collective action lawsuit about? Plaintiffs allege that Defendants' compensation practices violated federal and New York law. Plaintiffs claim that they were not compensated for hours worked over forty (40) hours a week at a rate of pay and a half, were not compensated at a prevailing/union level wage on public works projects, and unpaid wages. Plaintiffs claim that they and others who worked for Defendants are entitled to overtime wages, unpaid waged [sic], prevailing/union level wages, liquidated damages, attorneys' fees and costs.")). In such a circumstance, an opt-in plaintiff is deemed to have asserted not just a FLSA claim, but all related wage claims, even if asserted under state law. *Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-CV-856, 2022 WL 103639, at *4 (E.D.N.Y. Jan. 11, 2022) (collecting cases); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 90 (S.D.N.Y. 2001) ("Section 216(b) gives them the status of parties and, as parties, they should have the same rights as the named Plaintiffs to have all their related claims adjudicated in the same forum.").

Therefore, Duque—like all of the opt-in plaintiffs—has asserted all five claims in the Third Amended Complaint against the Defendants, including WTPA, breach of contract, and quantum meruit claims. (*See* TAC ¶¶ 186–91, 192–204, 222–34).

Accordingly, the Court recommends that summary judgment be granted in favor of the JLS Defendants for Duque's FLSA and NYLL overtime and unpaid minimum wage claims.  However, Duque's other claims for violations of WTPA, breach of contract, and quantum meruit remain.[15]

      D.    <u>Plaintiff Cooper's Claims Against the JLS Defendants</u>

For similar reasons, Cooper's FLSA and NYLL overtime and unpaid wages claims should be dismissed against the JLS Defendants; but his breach of contract, quantum meruit, and WTPA claims should survive.

It is undisputed that Cooper did not work more than 40 hours per week for the Moving Defendants in 2017 and 2018.  (Defs.' 56.1 Stmt. ¶ 36; Pls.' 56.1 Stmt. ¶ 36).  As a matter of law, this precludes him from asserting an overtime claim under FLSA and NYLL.  *Supra* at p. 20; *see, e.g.*, *McNamara*, 40 F. Supp. 3d at 353 (granting summary judgment for defendants where plaintiff did not work more than 40 hours in a given work week).  And with the minimum wage claim, like Duque, Cooper also testified that he was regularly paid between $20.00 and $25.00 per hour throughout his employment, (Cooper Dep. at 46:19–23), which is a rate higher than the minimum wage.  *See History of the Minimum Wage in New York State*, *supra* (showing that the applicable minimum wage in 2017 was $11.00 per hour, and in 2018, it was $13.00 per hour).  This bars any minimum wage claim.

The Moving Defendants make the same arguments regarding Cooper's other claims—that his opt-in status means he has no claims other than FLSA—that they did for Duque.  (Defs.' Mem. of Law at 12–13).  And they fail for the same reason, *supra* at

---

[15] And they remain for the other Plaintiffs as well.  *Supra* at nn. 12–13.

pp. 22–23, and so the Court declines to recommend dismissal of Cooper's WTPA, breach of contract, and quantum meruit claims.

### E.   JLS's Liability for Work Done While Plaintiffs Were Employed by the Guiliano Defendants

In their final argument, the Moving Defendants seek an order that the JLS Defendants cannot be liable for time when Plaintiffs worked for the Guiliano Defendants.  (*See* Defs.' Mem. of Law at 7–9).

The Moving Defendants appear to have moved for such a finding because of their belief that Plaintiffs are seeking to hold JLS, SEG, and Guiliano Environmental liable as joint employers.  (*See id.* at 7).  But there is nothing in Plaintiffs' briefs to suggest that they are seeking to hold the Guiliano Defendants liable as joint employers with the JLS and SEG Defendants.  Plaintiffs do argue that the JLS and SEG Defendants are jointly liable, but in so doing, they make no mention of the Guiliano Defendants.  (*See* Pls.' Opp'n at 7–9; Pls.' Mem. of Law at 8–11).  That being said, Plaintiffs' papers are hardly a model of clarity.  At one point (as discussed below), they dispute the Moving Defendants' contention that JLS and Guiliano Environmental are not joint employers. (*See* Pls.' Counter-Stmt. ¶¶ 11–14, 30).  Why they do so is a mystery, having never contended that the two entities are joint employers anywhere else.  (Perhaps, as is customary in this case thus far, it is simply to oppose whatever the other side is doing).

The Moving Defendants' argument that the JLS Defendants cannot be held liable for time worked while employed by the Guiliano Defendants is self-evident, in the absence of a joint employer or similar relationship.  And on that point, the Moving Defendants' claim that JLS and Guiliano Environmental are separate and distinct employers goes unopposed.  Although in their Rule 56.1 counterstatement, Plaintiffs

dispute the fact that there is no relationship between JLS and Guiliano Environmental or SEG and Guiliano Environmental, (*see id.* ¶¶ 11–14, 30), their objection is reduced to three words, with no further explanation: "Inadmissible, no foundation." (*Id.*).  Such "[b]lanket, unsupported denials . . . are contrary to the text of Local Rule 56.1 . . . [and] the case law in this Circuit regarding practice under Local Rule 56.1." *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735, 2019 WL 1244291, at *6 (S.D.N.Y. Mar. 18, 2019).  As a result, the Moving Defendants' contention is deemed unrebutted. (Plaintiffs also do not dispute that certain Plaintiffs "did not work for Defendant JLS during the time period that . . . [they] worked [for] Defendant Guiliano." (Defs.' 56.1 Stmt. ¶ 19; Pls.' Counter-Stmt. ¶ 19)).  As such, to the extent that Plaintiffs are seeking to hold the JLS Defendants responsible for time worked for the Guiliano Defendants, whether under a joint employer theory or any other, the motion should be granted: as a matter of law, the JLS Defendants are not responsible for time worked by Plaintiffs for the Guiliano Defendants.

II.   Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on three grounds: (1) that the JLS Defendants and SEG Defendants are joint employers; (2) for three WTPA claims under NYLL § 195; and (3) a breach of contract claim premised on the JLS Defendants' failure to pay a union-level wage on the FIT project worksite.  (*See generally* Pls.' Mem. of Law).  The Court recommends denying the motion in full.

As an initial matter, Plaintiffs' briefs and Rule 56.1 statements run afoul of the basic rules governing such submissions.  Namely, many alleged factual statements

contain only citations to the Third Amended Complaint,[16] which does not constitute admissible evidence and is insufficient to carry a party's burden on summary judgment. *Cf. Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("He cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." (citations omitted)).  And when record citations are provided, the purported evidence often bears no resemblance to the fact supposedly undisputed.  *See infra* at pp. 28–29.  The Court cannot, and does not, rely on the portions of Plaintiffs' statements that violate these basic Rule 56.1 requirements.

    A.    <u>Liability of the JLS Defendants and SEG Defendants as Joint Employers</u>

Plaintiffs first argue that every Defendant—including JLS, SEG, Cordero, Ordones, Sekato, and Figliola—is liable as a joint employer under FLSA and NYLL. (Pls.' Mem. of Law at 11).

---

[16] *E.g.*, Pls.' 56.1 Stmt. ¶ 8 ("Plaintiffs were always paid cash by JLS as JLS had Plaintiffs sign their paychecks and immediately handed them back to the site project supervisor, never having received overtime pay not the whole sum of each of their paychecks.  Third Amended Complaint ¶ 118."); *id.* ¶ 19 ("Each Plaintiff that worked for JLS and/or SEG did not observe at any project worksite any lawfully required job site notices.  Third Amended Complaint ¶¶ 123–127; SEG *passim*."); *see also, e.g.*, *id.* ¶¶ 4, 14, 21.

Plaintiffs also use "*passim*" in several of their citations to the record, (*id.* ¶¶ 19, 21), which is improper under both the Federal Rules and Local Civil Rules.  *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a party asserting an undisputed fact must support the assertion by "citing to *particular parts* of materials on the record" (emphasis added)); Loc. Civ. R. 56.1 committee note ("[A]ll such paragraphs in both statements and opposing statements must be supported by citations to *specific evidence* of the kind required by Fed. R. Civ. P. 56(c)." (emphasis added)); *see also Jianjun Chen*, 2019 WL 1244291, at *6–*7 ("Counsel for Plaintiffs' failure to meet their obligations under Local Rule 56.1 are further compounded by their inappropriate use of '*passim*' in their memorandum of law opposing summary judgment. . . .  Plaintiffs' use of *passim* . . . provides the Court with no basis in the record for their assertions[.]").

The Court already recommends granting summary judgment in favor of the Moving Defendants to dismiss the FLSA, NYLL, and WTPA claims against SEG and Figliola, *see supra* at pp. 14–19.  So, Plaintiffs' motion comes down to the argument that JLS, Cordero, Ordones, and Sekato should be held liable as joint employers.  As explained above, *supra* at pp. 13–14, the *Carter* factors are the Court's primary consideration for this inquiry: "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter*, 735 F.2d at 12 (quotations omitted).  Furthermore, to be an employer, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  *Irizarry*, 722 F.3d at 109.

Plaintiffs fail to identify any admissible evidence in their Rule 56.1 statements or their briefs to support summary judgment in their favor.  The only paragraphs in their 56.1 statement that support or relate to joint employer status are paragraphs 2, 4, 5, 6, 7, 9, 10, and 11.  But these supposedly undisputed facts are supported only by reference to pleadings (which are not evidence) and bogus citations.  (*See, e.g.*, Pls.' 56.1 Stmt. ¶ 4 (citing to the Third Amended Complaint regarding Cordero's and Ordones's alleged status as employers); *see also* Pls.' Mem. of Law at 9–10 (citing Third Amended Complaint in support)).  For instance, in Paragraph 4 of their Rule 56.1 statement, Plaintiffs claim that Cordero and Ordones "had control over each Plaintiff who worked for JLS as they both were directly involved in the hiring, firing, setting rates of pay and hours worked of each Plaintiff."  (Pls.' 56.1 Stmt. ¶ 4).  In support of that statement, they cite to "JLS [Exhibit A] at 34:11–24, 35:1–4; Third Amended Complaint ¶ 22."  (*Id.*).

The Third Amended Complaint is insufficient to carry a party's burden on summary judgment, *see supra* at pp. 26–27 & n.16; as to the citation to Exhibit A, Cordero's deposition, the only potentially relevant excerpt would be Cordero's testimony that Cordero is a "fifty percent owner" of JLS and that Ordones is "involved in the day-to-day business" of JLS. (Cordero Dep. at 34:13–14, 34:19–35:4). That testimony does not support the assertion that Cordero and Ordones had control over each of the Plaintiffs and that they were "directly involved in the hiring, firing, setting rates of pay and hours worked of each Plaintiff." (Pls.' 56.1 Stmt. ¶ 4).

The remaining paragraphs are similarly unsupported. For Paragraphs 2, 7, and 11—alleging that Cordero and Ordones manage the day-to-day operations of JLS and that Sekato had supervisory authority over JLS employees—Plaintiffs cite to four pages of Cordero's deposition transcript. (Pls.' 56.1 Stmt. ¶¶ 2, 7, 11 (citing to "JLS at 12:18–15:6")). The entirety of this excerpt is comprised of an argument between counsel about the scope of the deposition. (Cordero Dep. at 12:18–15:6). Two of Plaintiffs' citations to deposition transcripts—in paragraphs 5 and 9 of their Rule 56.1 statement—do not even cite to part of the deponent's testimony, but to portions of the transcript's front matter. *Compare* Pls.' 56.1 Stmt. ¶¶ 5, 9 (citing to "JLS at 7:13–16"), *with* Cordero Dep. at 7:13–16 ("[It is stipulated] that the witness must be alone physically during the entire deposition and may not be communicating or receiving messages or otherwise electronically or otherwise during the deposition."). Paragraphs 6 and 10—alleging that Sekato was a direct supervisor of Plaintiffs, (Pls.' 56.1 Stmt. ¶¶ 6, 10)—cite to three lines in Cordero's deposition transcript, in which he testifies that "[t]he hiring and the firing [of employees] would actually go through say Steve [Sekato]. He is my supervisor." (Cordero Dep. at 43:3–5). However, this testimony only establishes that Sekato was a

JLS supervisor, not that he supervised any Plaintiff or had regular interactions with Plaintiffs.  (Pls.' 56.1 Stmt. ¶¶ 6, 10; Defs.' Counter-Stmt. ¶ 6).

Plaintiffs have not met their burden of showing that there is no genuine issue of material fact.  Thus, summary judgment on joint employer status as to JLS, Cordero, Ordones, and Sekato should be denied.

B.    Liability Under the Wage Theft Protection Act

Plaintiffs also move for summary judgment on their three WTPA claims under NYLL §§ 195(1), (3), and (4).  (*See* Pls.' Mem. of Law at 12–14).  The Court addresses each WTPA claim in turn.

1.    Wage Notices

The WTPA requires employers to provide a written wage notice to employees "within 10 business days of his first day of employment."  *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015)).  The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee[.]"  NYLL § 195(1)(a).

As an initial matter, Plaintiffs repeatedly cite to 29 C.F.R. § 516.4, which relates to an employer's requirement under federal law to post minimum wage notices relating to FLSA.  (*See* Pls.' Mem. of Law at 12–13).  To the extent that Plaintiffs move for summary

judgment on a violation of 29 C.F.R. § 516.4, the Moving Defendants are correct that there is no private right of action for violating this regulation, since enforcement of that provision is entrusted solely to the Secretary of Labor.  *See Lopez v. Tri-State Drywall, Inc.*, 861 F. Supp. 2d 533, 536–37 (E.D. Pa. 2012).  But also, Plaintiffs have not asserted such a violation in their pleadings.[17]

Turning to the WTPA, Plaintiffs have asserted violations of the wage notice provision in NYLL § 195(1), for which there is a private right of action.  *See* NYLL § 198(1-b).  In seeking summary judgment on this claim, Plaintiffs only point to one alleged fact: "Plaintiffs requested production from JLS of any job site notice concerning any wage laws as JLS failed to produce any such notices in response to Plaintiffs' discovery demands."  (Pls.' 56.1 Stmt. ¶ 18).[18]  The citation to the record does not support Plaintiffs' alleged statement of fact.  Plaintiffs cite to page 56 of the Cordero deposition transcript.  (*See id.* (citing to "JLS at 56:2–24")).  At this part of the transcript, Cordero explains the meaning of "time and material" in the context of a construction project, as well as how JLS employees were paid.  (Cordero Dep. at 56:2–24).  There is no reference to wage notices, job site notices, or any discovery disputes.

---

[17] In their briefs, Plaintiffs bring up equitable tolling of their FLSA claims because of a violation of 29 C.F.R. § 516.4.  (Pls.' Mem. of Law at 12–13 ("As a consequence of Defendants' failure to post the required notices, Plaintiffs causes of action under the FLSA are equitably tolled until they had actual notice of their overtime claims.")).  However, Plaintiffs do not explain how this relates to their motion for summary judgment, their pleadings, or any part of the case.

[18] Plaintiffs' remaining Rule 56.1 statement paragraphs on their WTPA claims either fail to comply with Local Civil Rule 56.1 or cite to inadmissible evidence.  *See supra* at pp. 28–29; (*see* Pls.' 56.1 Stmt. ¶¶ 19–21).  Specifically, paragraphs 19 and 21 cite to the Third Amended Complaint and use *passim* citations, which are improper.  *See supra* at n.16.  Paragraph 20 is a word-for-word copy of paragraph 18, which is discussed above.  (Pls.' 56.1 Stmt. ¶ 20; Defs.' Counter-Stmt. ¶ 20).

Furthermore, absent a motion to compel, an asserted discovery failure is not sufficient to win on summary judgment. *See supra* at pp. 21–22. The record, which the Moving Defendants do cite to properly, shows that there is a genuine dispute of fact as to whether JLS provided wage notices to its employees. For example, in his deposition, Cordero testified that at the FIT project worksite, several different types of notices were posted, including "prevailing wage postings. There was a whole bunch of postings." (Defs.' Counter-Stmt. ¶ 18; Cordero Dep. at 67:12–18). This testimony creates an issue of fact regarding JLS's wage notices that the Court cannot resolve at the summary judgment stage.[19] Thus, the Court recommends that summary judgment be denied as to Plaintiffs' wage notice claim.

### 2.   Wage Statements

The WTPA requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. NYLL § 195(3). "Under the NYLL, an employer's 'complete and timely payment of all wages . . . to the employee who was not provided notice' or 'who was not provided statements' serves as an affirmative defense to a wage notice or wage statement claim." *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 219 (E.D.N.Y. 2021) (quoting NYLL § 198(1-b), 198(1-d)).

---

[19] Plaintiffs continue their argument that the JLS and SEG Defendants should be "estopped" from arguing that they posted wage notices because they failed to respond to Plaintiffs' discovery requests for such notices. (Pls.' Reply Mem. of Law in Supp. of Mot. for Summ. J. ("Pls.' Reply"), Dkt. No. 197 at 3). If Plaintiffs are seeking an adverse inference, they should have sought an admission from the Defendants on the existence or non-existence of the wage notices, and if Defendants did not respond, a proper motion to compel. Plaintiffs failed to do so. (*See* Order dated Dec. 6, 2022 (denying Plaintiffs' motion to compel because of failure to comply with local and federal rules)); *e.g.*, *Valenti*, 850 F. Supp. 2d at 452 n.1.

The Moving Defendants' affirmative defense to Plaintiffs' wage statement claims is valid and defeats Plaintiffs' motion for summary judgment. (*See* Defs.' Opp'n at 11–12). The Moving Defendants pled this affirmative defense in their answer to the Third Amended Complaint. (Answer at 20–21). Plaintiffs have not moved for summary judgment on this affirmative defense, and so it survives; accordingly, the Moving Defendants may still assert this affirmative defense at trial. *See, e.g.*, *Mendez*, 564 F. Supp. 3d at 219 (denying summary judgment on wage statement claim because defendant had pled affirmative defense under NYLL § 198(1-d)).[20] As noted earlier, the Court also finds that the Moving Defendants are entitled to summary judgment as to Plaintiffs Duque's and Cooper's wage claims, since they did not produce any evidence they were denied minimum wage or overtime. *Supra* at pp. 19–24. So, with respect to Duque and Cooper, the Court has already found that the factual predicate for the affirmative defense—complete and timely payment of wages—has been proven.

For these reasons, the Court thus recommends that Plaintiffs' motion for summary judgment on their wage statement claims be denied.

---

[20] In general, when a plaintiff seeks complete dismissal of one of their claims at the summary judgment stage, they must also move for summary judgment on any affirmative defenses that have been properly asserted by a defendant. In so doing, plaintiff, as the movant, has the burden of pointing to the absence of a genuine issue of material fact in the defendant's affirmative defense. *See FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) ("Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.'"); *see also Brody v. Village of Port Chester*, No. 00-CV-7481, 2007 WL 735022, at *5 n.12 (S.D.N.Y. Mar. 12, 2007) ("[Plaintiff]'s burden on summary judgment remains, like any movant's, to demonstrate the absence of a material factual question. In evaluating his motion, the Court will resolve all ambiguities and draw all inferences against him. [Plaintiff] thus has the burden on this motion to show no genuine issue of material fact as to his lack of 'actual notice' [under defendant's affirmative defense].").

3.    Record-Keeping Violations

Plaintiffs further move for summary judgment on violations of the recordkeeping provision of the WTPA.  (Pls.' Mem. of Law at 13–14).  The WTPA requires employers to "establish, maintain and preserve for not less than six years . . . true, and accurate payroll records," including information such as the weekly hours worked, the rates of pay, gross wages, and other payroll information.  NYLL § 195(4).  However, as the Moving Defendants correctly point out, (Defs.' Opp'n at 12), there is no private cause of action under NYLL § 195(4).  *See Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 571 (E.D.N.Y. 2015) ("[N]othing in the NYLL authorizes an independent cause of action based on a violation of NYLL § 195(4)[.]"); *Gerdova v. Krolewskie Jadlo & Affiliated Rests.*, No. 20-CV-1473, 2021 WL 8316277, at *6 (E.D.N.Y. July 21, 2021) ("The NYLL does not provide statutory damages for violations of section 195(4)."), *report and recommendation adopted*, Order (Aug. 31, 2021).  Thus, the Court recommends that Plaintiffs' motion for summary judgment on liability under NYLL § 195(4) be denied.

Furthermore, because there is no private cause of action under this provision, the Court recommends that summary judgment be granted *sua sponte* in favor of all Defendants on Plaintiffs' section 195(4) claims.  (*See* TAC ¶ 199).

> District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances.  When doing so, however, they must take care to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material facts to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law.

*See Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 49 (2d Cir. 2020) (quotations omitted).  Plaintiffs had a full and fair opportunity to argue to litigate their section 195(4) claim at this stage, and they have done so.  They could have demonstrated (but

34

failed to) any legal basis for the claim.  Defendants are indisputably entitled to judgment as a matter of law because of the lack of a private right of action under section 195(4). Thus, the Court recommends that summary judgment be granted in favor of Defendants with respect to any Plaintiff's claim for violation of NYLL § 195(4).

      C.     <u>Failure to Pay Union-Level Wages on the FIT Project Worksite</u>

Finally, Plaintiffs move for summary judgment on the "liability of JLS with respect to Plaintiffs' entitlement to receive union level wages on the FIT worksite project." (Pls.' Mem. of Law at 1).  The only mention of this ground for summary judgment is in the introduction to Plaintiffs' memorandum of law, and they do not discuss it in any further detail. (*See* Defs.' Opp'n at 14).  Plaintiffs, as movants, bear the burden of "demonstrat[ing] the absence of a genuine issue of material fact" on this claim. *Celotex*, 477 U.S. at 323.  They have failed to do so.  As such, the Court recommends denying Plaintiffs' motion for summary judgment on this claim.

CONCLUSION

For the reasons described above, the Court respectfully recommends granting the Moving Defendants' motion for summary judgment in part and denying Plaintiffs' motion in its entirety.  Specifically, the Court recommends:

- Every Plaintiffs' (except Lubas's) FLSA, NYLL, and WTPA claims against SEG be dismissed.

- Every Plaintiffs' FLSA, NYLL, and WTPA claims against Figliola be dismissed.

- Duque's FLSA and NYLL claims against the Moving Defendants be dismissed.

- Cooper's FLSA and NYLL claims against the Moving Defendants be dismissed.

- A finding as a matter of law that the JLS and Guiliano Defendants are not joint employers under FLSA or NYLL.

- Every Plaintiffs' claim under NYLL § 195(4) be dismissed against all Moving Defendants.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara*  July 1, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York